**The STATE of Ohio, Appellant,**

v.

**COSTON, Appellee.**

[Cite as *State v. Coston*, 168 Ohio App.3d 278, 2006-Ohio-3961.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 05AP–905.

Decided Aug. 3, 2006.

Ron O'Brien, Prosecuting Attorney, and Richard Termuhlen II, Assistant Prosecuting Attorney, for appellant.

Yeura R. Venters, Public Defender, and Paul Skendelas, Assistant Public Defender, for appellee.

———————

FRENCH, Judge.

{¶ 1} Plaintiff-appellant, the state of Ohio, appeals from the judgment of the Franklin County Court of Common Pleas, whereby the trial court granted a motion to suppress evidence in favor of defendant-appellee, Tommy L. Coston.

{¶ 2} The Franklin County Grand Jury indicted appellee on one count of carrying a concealed weapon, a fourth-degree felony, in violation of R.C. 2923.12, and one count of having a weapon while under disability, a third-degree felony, in violation of R.C. 2923.13. The charges stemmed from Columbus Police Officer Adam Hicks's discovery of a firearm in appellee's vehicle during a traffic stop.

{¶ 3} Appellee filed a motion to suppress the firearm, claiming that Officer Hicks had obtained the firearm in contravention of appellee's constitutional rights. The trial court held a hearing on the motion.

{¶ 4} At the hearing, Officer Hicks testified to the following on appellant's behalf. In October 2004, Officer Hicks observed appellee driving on a street in Columbus, Ohio, and making a turn in his vehicle without utilizing a turn signal. As a result, Officer Hicks conducted a traffic stop on appellee. Officer Hicks approached appellee's vehicle and "smelled a strong odor of marijuana emitting from the vehicle." Thus, Officer Hicks had appellee exit his vehicle, and he conducted a pat-down search on appellee and placed him in the police cruiser "to go and retrieve the narcotics, if there [were] any." Next, Officer Hicks told appellee that he was "going up to [appellee's] vehicle," and then he asked appellee a "procedural" question: "Do you have any guns, bombs, drugs, knives, et cetera?" Appellee stated that he had a firearm under a floor mat in the vehicle, and Officer Hicks retrieved the firearm.

{¶ 5} On cross-examination, Officer Hicks testified to the following. Officer Hicks reiterated that he placed appellee in the backseat of the cruiser. Appellee would not have been able to open the door from the inside in the backseat of the cruiser. Officer Hicks did not provide appellee *Miranda* warnings when he asked appellee if he had any "guns, bombs, drugs, [or] knives" in the vehicle. In the course of events, Officer Hicks also found a burnt marijuana cigarette in the vehicle's ashtray, but another officer suggested that appellee not be charged with the marijuana possession. Upon finding the concealed firearm, Officer Hicks

stated, "This is probably a good 3–1/2–hour arrest." Officer Hicks also elaborated, "[M]any, many cars that I stop, I smell marijuana. Do I always recover marijuana out of it? No."

{¶ 6} Lastly, in response to the trial court's questions about the traffic stop, Officer Hicks reiterated:

I was going to go into the vehicle anyhow to try to retrieve the suspected marijuana that I smelled. But once he told me [about the firearm], I went directly to the firearm.

Officer Hicks also told the trial court that the marijuana cigarette was obtained during the routine inventory search of appellee's vehicle. Officer Hicks stated that there was a passenger in the vehicle whom he had stand outside the vehicle.

{¶ 7} The trial court granted appellee's motion to suppress the firearm. The trial court concluded:

Since [Officer Hicks'] testimony concerning the fact that he smelled burnt marijuana was not challenged by the defense, the testimony is admissible. The Court does not need further testimony concerning the officer's qualifications. The fact that he was a Columbus Police Officer of some duration [and] the fact that he testified that he smelled burnt marijuana, without objection by the defense, was sufficient for this Court to assume that he did in fact smell burnt marijuana.

* * *

While [appellee] was in custody in the back of the police vehicle and without Mirandizing [appellee], the officer asked whether there were any guns, drugs, bombs etc. in the vehicle.

* * * [T]here was no reason for the officer to ask [appellee] these questions without Mirandizing him.

Further, there may be some question as to why [appellee] was put in the cruiser in the first place, when the passenger was allowed to stand outside the vehicle. * * *

[A]s soon as [appellee] admitted to a gun being in the car, [Officer Hicks] went directly to where the gun would be located and retrieved the gun. Again the officer had not searched for drugs and did not come upon the gun while searching for drugs as a result of his smelling "burnt marijuana."

If the officer had conducted a search for drugs on the basis of his smell of "burnt marijuana" and without asking [appellee] if he had a gun in the car without Mirandizing him, then the officer would have found the gun in an open and obvious place during his search for drugs. Under these circumstances the confiscation and the charge of concealed weapon would have been appropriate.

However that is not the case and the Court, therefore, holds that the confiscation of the gun by the officer was a direct and proximate result of his questioning [appellee], who was in custody, without Mirandizing him.  * * *

{¶ 8} Appellant appeals, raising two assignments of error:

ASSIGNMENT OF ERROR NUMBER ONE

The trial court improperly found that *Miranda* warnings are required before a police officer may ask a properly stopped motorist if he has any weapons in his automobile.

ASSIGNMENT OF ERROR NUMBER TWO

Assuming that the officer should have afforded appellee his *Miranda* warnings, the court should have concluded that the gun would inevitably be properly discovered by the officer.

{¶ 9} We will address together appellant's first and second assignments of error.  In its assignments of error, appellant contends that the trial court erred by granting appellee's motion to suppress the firearm that Officer Hicks found in appellee's vehicle.  We agree.

{¶ 10} Under the Fifth Amendment to the United States Constitution, no person "shall be compelled in any criminal case to be a witness against himself." Thus, *Miranda v. Arizona* (1966), 384 U.S. 436, 478–479, 86 S.Ct. 1602, 16 L.Ed.2d 694, requires that before questioning a suspect in custody, law-enforcement officials must inform the suspect: (1) that he or she has the right to remain silent, (2) that his or her statements may be used against him or her at trial, (3) that he or she has the right to have an attorney present during questioning, and (4) that if he or she cannot afford an attorney, one will be appointed.

{¶ 11} The question of whether an individual is in custody is a mixed question of law and fact.  See *Thompson v. Keohane* (1995), 516 U.S. 99, 112–113, 116 S.Ct. 457, 133 L.Ed.2d 383; *State v. Smith* (June 3, 1997), Franklin App. No. 96APA10–1281, 1997 WL 304418.  Thus, here, we independently determine whether, considering the trial court's factual conclusions, the circumstances of the traffic stop fall within the legal definition of custody.  See *Thompson,* 516 U.S. at 112, 116 S.Ct. 457, 133 L.Ed.2d 383; *State v. Antoline,* Loraine App. No. 02CA008100, 2003-Ohio-1130, at ¶ 14.

{¶ 12} Ordinarily, persons temporarily detained during a traffic stop are not " 'in custody' for the purposes of Miranda." *Berkemer v. McCarty* (1984), 468 U.S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317.  The traffic stop does not exert pressures on the detained person "that sufficiently impair his free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights."  Id. at 437, 104 S.Ct. 3138, 82 L.Ed.2d 317.  However, "[i]f a

motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by Miranda." Id. at 440, 104 S.Ct. 3138, 82 L.Ed.2d 317. In this regard, "[i]t is settled that the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" Id., quoting *California v. Beheler* (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275. The "relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Id. at 442, 104 S.Ct. 3138, 82 L.Ed.2d 317; see, also, *State v. Healy* (Aug. 4, 2000), Montgomery App. No. 18232, 2000 WL 1062197 (recognizing that "[t]he proper legal standard for determining whether a suspect is 'in custody' for *Miranda* purposes is whether a reasonable man in the suspect's position would have believed he was the subject of a custodial interrogation").

{¶ 13} In a very recent decision, *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985 at ¶ 14, the Ohio Supreme Court elaborated on when an individual is in custody during a traffic stop. In *Farris*, a law-enforcement officer stopped the defendant for speeding. During the traffic stop, the officer smelled an odor of marijuana emanating from the defendant's vehicle. The officer then instructed the defendant to exit the vehicle, and he conducted a pat-down search on the defendant, but found no drugs. Next, the officer took the defendant's car keys and ordered him to sit in the front seat of the police cruiser. While they were seated in the front seat of the cruiser, the officer told the defendant that he had smelled marijuana in his vehicle. The officer told the defendant that he was going to search the vehicle and then specifically asked whether there were any drugs or drug devices in the vehicle. The defendant admitted that there was a marijuana pipe in a bag in his trunk. Ultimately, the officer found the marijuana pipe in the trunk of the defendant's vehicle.

{¶ 14} The Ohio Supreme Court concluded that "the officer's treatment of [the defendant] after the original traffic stop placed [the defendant] in custody for practical purposes." Id. at ¶ 14. The court noted that the law-enforcement officer "patted down [the defendant], took his car keys, instructed him to enter the cruiser, and told [the defendant] that he was going to search [the defendant's] car because of the scent of marijuana." Id. Thus, according to the court, the defendant "was not free to leave the scene" and "reasonably believed that he would be detained at least as long as it would take for the officer to search his automobile." Id. Therefore, the Ohio Supreme Court concluded that the defendant was entitled to *Miranda* protections during the traffic stop. Id. at ¶ 13–36.

{¶ 15} Here, we conclude that Officer Hicks placed appellee "in custody for practical purposes" during the traffic stop. As in *Farris*, Officer Hicks instructed appellee to exit his vehicle, conducted a pat-down search on him, and

locked him in the police cruiser. Moreover, as in *Farris,* Officer Hicks indicated that he was going to search appellee's vehicle, thereby causing appellee to "reasonably [believe] that he would be detained at least as long as it would take for the officer to search his automobile." Id. at ¶ 14. Pursuant to *Farris,* because appellee was in custody when Officer Hicks asked him about the presence of "guns, bombs, drugs, knives" in his vehicle, Officer Hicks was required to inform appellee about his *Miranda* rights before asking the question.

{¶ 16} The United States Supreme Court has held that in regards to the Fifth Amendment to the United States Constitution, a law-enforcement officer's "failure to give a suspect the warnings prescribed" by *Miranda* does not mandate the "suppression of the physical fruits of the suspect's unwarned but voluntary statements." *United States v. Patane* (2004), 542 U.S. 630, 633–634, 124 S.Ct. 2620, 159 L.Ed.2d 667. However, in *Farris,* the Ohio Supreme Court held that greater protection is afforded to defendants under Section 10, Article I of the Ohio Constitution than under the Fifth Amendment. Section 10, Article I of the Ohio Constitution states that "[n]o person shall be compelled, in any criminal case, to be a witness against himself." See *Farris,* 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, at ¶ 49. Thus, in *Farris,* the Ohio Supreme Court held that physical evidence obtained as a result of statements made in contravention of *Miranda* is excludable under Section 10, Article I of the Ohio Constitution.

{¶ 17} Nonetheless, under the inevitable-discovery doctrine, evidence obtained unconstitutionally is admissible if it "would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Perkins* (1985), 18 Ohio St.3d 193, 196, 18 OBR 259, 480 N.E.2d 763; see, also, *Nix v. Williams* (1984), 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (holding that under the inevitable-discovery doctrine, if the evidence in question "ultimately or inevitably would have been discovered by lawful means * * * then * * * the evidence should be received"). Under the inevitable discovery doctrine, the burden is on the prosecution to demonstrate, within a reasonable probability, that law enforcement would have discovered the evidence in question apart from unlawful conduct. *Perkins,* 18 Ohio St.3d at 196, 18 OBR 259, 480 N.E.2d 763.

{¶ 18} "[A] law enforcement officer, who is trained and experienced in the detection of marijuana, should not be prohibited from relying on his or her sense of smell to justify probable cause to conduct a search for marijuana." *State v. Moore* (2000), 90 Ohio St.3d 47, 51, 734 N.E.2d 804. Therefore, "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle." Id. at 48, 734 N.E.2d 804. " 'If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.' " (Emphasis omitted.) *Wyoming v. Houghton* (1999), 526

U.S. 295, 301, 119 S.Ct. 1297, 143 L.Ed.2d 408, quoting *United States v. Ross* (1982), 456 U.S. 798, 825, 102 S.Ct. 2157, 72 L.Ed.2d 572. The search based on probable cause on marijuana possession permitted in *Moore* extends to the passenger compartment of the vehicle, but not the trunk. *Farris,* 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985, at ¶ 50, 52.

{¶ 19} Here, when Officer Hicks asked appellee about "guns, bombs, drugs, knives" in appellee's vehicle, the officer was already going to search the vehicle for marijuana because he smelled an odor of marijuana emanating from the vehicle. Officer Hicks testified about having detected an odor of marijuana during other traffic stops, and, under Moore, we may infer through such testimony that the officer was duly qualified to identify the odor emanating from appellee's vehicle.

{¶ 20} Such were not the circumstances in cases that appellee advances to support the trial court's decision to hold invalid Officer Hicks's search. In particular, appellee cites *State v. McKee,* Hancock App. No. 5–03–10, 2003-Ohio-5124, 2003 WL 22228968, at ¶ 15, 17, and its companion case *State v. O'Neal,* Hancock App. No. 5–03–05, 2003-Ohio-5122, 2003 WL 22228760, at ¶ 16, in which the Third District Court of Appeals held invalid a law-enforcement officer's search for marijuana in a vehicle because "no evidence was adduced to establish that [the law-enforcement officer] was qualified to recognize the odor of marijuana." The appellate court also recognized that the law-enforcement officer "candidly testified that he was uncertain that the smell that he detected was, in fact, marijuana." *McKee,* 2003-Ohio-5124, 2003 WL 22228968, at ¶ 17; *O'Neal,* 2003-Ohio-5122, 2003 WL 22228760, at ¶ 16.

{¶ 21} Appellee also refers to *State v. Bradley,* Richland App. No. 2003–CA–0040, 2003-Ohio-5914, 2003 WL 22501501, at ¶ 7–8, 26, 28, in which the Fifth District Court of Appeals held that a law-enforcement officer unlawfully searched a defendant after an assisting officer detected an odor of marijuana emanating from the vehicle in which the defendant was a passenger. The appellate court indicated that "no evidence was presented at the suppression hearing that [the law-enforcement officers were] 'qualified to recognize the odor' of marijuana." Id. at ¶ 26, quoting *Moore,* 90 Ohio St.3d 47, 734 N.E.2d 804, syllabus.

{¶ 22} Lastly, appellee cites *State v. Gaus* (Mar. 21, 2001), Ross App. No. 00CA2546, 2001 WL 1913831, in which the Fourth District Court of Appeals held that a law-enforcement officer improperly detained a driver and a passenger so that the officer could obtain a drug-sniffing dog to investigate drugs in a vehicle. The officer thought that she smelled marijuana emanating from the vehicle. In invalidating the detention, the appellate court stated that "no evidence was adduced to establish that [the law-enforcement officer] was 'qualified to recognize the odor' of marijuana." Id., quoting *Moore,* 90 Ohio St.3d 47, 734 N.E.2d 804,

syllabus. The court also noted that the officer "did not definitively identify the smell she detected as the smell of marijuana."

{¶ 23} Again, here the record contains evidence to allow us to deduce Officer Hicks's qualifications to identify the marijuana emanating from appellee's vehicle. Likewise, we recognize that in *McKee, O'Neal,* and *Gaus,* unlike here, the law-enforcement officers were uncertain that the smell they detected was, in fact, marijuana.

{¶ 24} Accordingly, under *Moore* and *Farris,* we conclude that Officer Hicks had probable cause to search the passenger compartment of appellee's vehicle upon detecting an odor of marijuana emanating from his vehicle. As indicated above, Officer Hicks was going to search the vehicle due to such probable cause, and, as the trial court recognized, Officer Hicks would have ultimately discovered the firearm pursuant to the search. Because, under both *Houghton* and *Moore,* Officer Hicks was entitled to search every part of appellee's passenger compartment that might have concealed the object of the search, i.e., the marijuana, we acknowledge that Officer Hicks was properly able to search under the floor mat where the officer found appellee's firearm. See, also, *State v. Jordan,* Cuyahoga App. No. 80851, 2002-Ohio-5086, 2002 WL 31124420, at ¶ 6, 25–26 (recognizing that under certain circumstances, a law-enforcement officer may search under a floor mat in a vehicle when conducting an investigative search based on probable cause). Thus, the trial court's decision to suppress the firearm is in contravention of the inevitable-discovery doctrine.

{¶ 25} In so concluding, we are mindful of *State v. Parrish,* Franklin App. No. 01AP–832, 2002-Ohio-3275, 2002 WL 1379027, at ¶ 38, in which this court held that:

> In order for the inevitable discovery exception to apply, the state must establish that "the police possessed the leads making the discovery inevitable at the time of the misconduct and that the police were actively pursuing an alternate line of investigation prior to the misconduct." *State v. Taylor* (2000), 138 Ohio App.3d 139, 151, 740 N.E.2d 704, citing *State v. Wilson* (1994), 97 Ohio App.3d 333, 335, 646 N.E.2d 863.

{¶ 26} We find nothing in the above language that precludes the application of the inevitable-discovery doctrine here. Rather, Officer Hicks had constitutional justification for searching appellee's vehicle before he asked appellee whether there were any "guns, bombs, drugs, [or] knives" in the vehicle, and Officer Hicks would have lawfully discovered the firearm upon initiating the search.

{¶ 27} In conclusion, based on *Farris,* we find that appellee was in custody when Officer Hicks asked him about the presence of "guns, bombs, drugs, [or] knives" in the vehicle, and the trial court did not err in determining that Officer

Hicks was required to advise appellee of his *Miranda* rights before asking the question. Therefore, we overrule appellant's first assignment of error. However, we further find that the trial court erred by not determining that the inevitable-discovery doctrine allowed for admission of the firearm that Officer Hicks discovered in appellee's vehicle, and we sustain appellant's second assignment of error. Having sustained appellant's second assignment of error, we reverse the judgment of the Franklin County Court of Common Pleas, and we remand this cause to that court for further proceedings consistent with this opinion.

Judgment reversed<br>
and cause remanded.

PETREE and McGRATH, JJ., concur.