OPINION
{¶ 1} Appellant, Tazzar Nelms ("appellant"), filed this appeal from a judgment by the Franklin County Court of Common Pleas whereby he was convicted of one charge of *Page 2 
murder, one charge of felonious assault, and one charge of having a weapon while under a disability in case No. 06CR-02-1351; and one charge of carrying a concealed weapon, one charge of improper handling of a firearm in a motor vehicle, and one charge of having a weapon while under a disability in case No. 06CR-02-1349.
 {¶ 2} Case No. 06CR-02-1351 arose from the shooting death of Terry Harper ("Harper") some time on the night of October 10, 2004. Christopher Willis ("Willis") testified that at the time of the shooting, he was living at 1321 East 26th Avenue with appellant and an individual named Thomas Knight ("Knight"). Willis testified that the house was being used as a place from which illegal drugs were being sold.
 {¶ 3} On the night in question, Willis arrived at the house at approximately 10:30. Appellant, Knight, Marc Corbin, and Michael Corbin were already present. The group ate pizza, played dice, and smoked marijuana. At some point, Willis went upstairs and went to bed. He was awakened by the sound of gunshots, and heard Michael Corbin calling him downstairs. Upon coming downstairs, Willis saw Harper, a person Willis knew because Harper stayed at the house sometimes, sitting down against a wall holding his leg, appellant holding a black 40-caliber handgun, and Michael Corbin holding a silver colored handgun. Willis and the others then left the house without contacting police. Two days later, Willis contacted police because he was concerned about being implicated in the shooting.
 {¶ 4} The day following the shooting, Columbus police were dispatched to the house after a maintenance man reported seeing what he believed was a body inside the residence. Officer Michael Friend found the dead body of Harper lying face down on the living room floor. Patrick Fardal ("Fardal") of the Franklin County Coroner's office testified *Page 3 
that there were three gunshot wounds in Harper's legs. Fardal further stated that he believed two of the wounds had been caused by a single bullet passing through both legs. The cause of death was loss of blood caused by one of the bullets severing the left femoral artery.
 {¶ 5} Columbus Police detectives recovered a number of items from the scene. Two 40-caliber shell casings were found, one in the living room and one next to the front door. In addition, two spent lead bullets or bullet fragments were found in the area of the front door. In the south upstairs bedroom of the house, detectives found a manual for a Beretta handgun, a Beretta gun-lock, and three live rounds for a nine-millimeter Lugar. In the north upstairs bedroom, detectives found Willis' wallet.
 {¶ 6} On April 9, 2005, members of the Columbus police strategic response unit were working in the area of the Ebonics Night Club, located on the corner of Fifth and Alton Avenues. The area is known as a high-crime area. A group of officers pulled into the parking lot across the street commonly used by patrons of the club. Officer Duane Mabry testified that as the officers pulled into the lot, they saw a 2005 Jeep Liberty backed into a parking space. Three individuals later identified as appellant, Knight, and Roger McCullough ("McCullough") were sitting in the vehicle, with appellant in the driver's seat, McCullough in the front passenger seat, and Knight in the back seat behind the driver's seat. Each of the three men made movements toward the floor beneath their seats, as if hiding something.
 {¶ 7} As police approached the vehicle, all three men exited the vehicle and began walking toward the club. Officer Mabry noticed that one of the windows had been left down, and there were CDs and other items of value left out in the open. Officer Mabry *Page 4 
asked Knight, who had been the last to leave the vehicle, if he was going to leave the window down with the items in plain sight, to which Knight responded in the affirmative. By that point, appellant and McCullough had started to cross the street toward the club. Officer Mabry approached the open window of the vehicle, and smelled what he recognized to be the odor of marijuana. Officer Mabry then ordered Knight to stop, and told other officers to stop appellant and McCullough, who had crossed the street and were approaching the door to the club.
 {¶ 8} The officers then searched the vehicle. Underneath the back passenger's seat in which Knight had been sitting, the officers found a clear plastic bag of marijuana. Underneath the driver's seat where appellant had been sitting, the officers found a loaded 40-caliber handgun with the handle pointed toward the front of the vehicle. The officers found another loaded firearm in the front passenger's door compartment.
 {¶ 9} Mark Hardy ("Hardy"), a criminalist with the Columbus Police Department, performed testing on the 40-caliber Beretta recovered from the Jeep Liberty. Hardy concluded that the shell casings found at the scene of Harper's shooting had been fired from the Beretta. Hardy further concluded that one of the spent bullet fragments recovered from the scene had been fired from the Beretta.
 {¶ 10} In case No. 06CR-02-1351, appellant was indicted by the Franklin County Grand Jury on one charge of murder in violation of R.C.2903.02 for purposely causing the death of Harper, one count of murder in violation of R.C. 2903.02 for causing Harper's death while committing or attempting to commit felonious assault, one count of felonious assault in violation of R.C. 2903.11, and one count of having a weapon while under a disability in violation of R.C. 2923.13. The two murder counts and the felonious assault *Page 5 
count each had firearm specifications. In case No. 06CR-02-1349, appellant was indicted by the grand jury on one count of carrying a concealed weapon in violation of R.C. 2923.12, one count of improper handling of a firearm in a motor vehicle in violation of R.C. 2923.16, and one count of having a weapon while under a disability in violation of R.C. 2923.13.
 {¶ 11} The state filed a motion seeking to join the two cases for trial, which the trial court granted over appellant's objection. The case then proceeded to trial. The two murder charges, the felonious assault charge, the carrying a concealed weapon charge, and the improper handling of a firearm charge were tried to a jury. Appellant waived his right to a jury trial on the two charges of having a weapon while under a disability and agreed to have those charges tried to the court. The jury acquitted appellant on the murder charge that alleged he purposely killed Harper, but convicted appellant of the remaining charges tried to the jury. The court convicted appellant of both of the charges of having a weapon while under a disability.
 {¶ 12} Appellant filed these consolidated appeals, alleging three assignments of error:
 I. Appellant was denied a Fair Trial as guaranteed by the Sixth and Fourteenth Amendments] of the United States Constitution in that the Defendant was Denied Effective Assistance of Counsel.
 II. The Trial Court Erred in Allowing Joinder of Indictments for Purposes of Trial.
 III. Appellant's Convictions Were Not Supported by the Evidence and were Against the Manifest Weight of the Evidence. *Page 6 
 {¶ 13} In his first assignment of error, appellant argues that he was denied effective assistance of counsel as a result of his trial counsel's failure to pursue a motion to suppress regarding the Beretta handgun recovered from the Jeep Liberty. Appellant's trial counsel filed a motion to suppress, but neither requested a hearing nor withdrew the motion.
 {¶ 14} In order to prevail on a claim of ineffective assistance of counsel, appellant must show that his counsel's performance fell below an objective standard of reasonableness, and that he suffered prejudice as a result. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674. The court in Strickland recognized that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Id. at 689. In analyzing claims of ineffective assistance of counsel, courts have applied a two-part test where "[t]he defendant must show (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) resulting prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." State v. Sapp,105 Ohio St.3d 104, 2004-Ohio-7008, at ¶ 76, 822 N.E.2d 1239.
 {¶ 15} The failure to file or pursue a motion to suppress does not automatically constitute ineffective assistance of counsel. State v.Madrigal, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52. Failure to file a motion to suppress can only constitute ineffective assistance of counsel where the record demonstrates that the motion would have been granted. State v. Lee, Franklin App. No. 06AP-226, 2007-Ohio-1594, citing State v. Robinson (1996), 108 Ohio App.3d 428, 670 N.E.2d 1077. *Page 7 
 {¶ 16} Appellant argues that there would have been a basis to grant the motion to suppress because the search of the Jeep Liberty stemmed from an investigative stop that was not supported by a reasonable articulable suspicion that illegal activity was occurring, in violation of Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Whether an investigative stop was based on a reasonable articulable suspicion depends upon the totality of the circumstances. State v.Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271. Factors that may justify an investigative stop include: (1) the location of the stop; (2) the officer's experience, training, or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. State v.Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489.
 {¶ 17} In this case, Officer Mabry testified that the parking lot outside the nightclub had been the site of prior arrests for drug and weapons violations. Officer Mabry also testified that as he approached the Jeep Liberty, the three occupants behaved in a suspicious manner, each reaching down toward the floor of the vehicle out of the officer's line of sight. The three then left the vehicle and attempted to cross the street to the nightclub, leaving the windows down with property lying out in plain sight. Officer Mabry then smelled what, based on his training and experience, he recognized as the smell of marijuana. SeeState v. Coston, 168 Ohio App.3d 278, 2006-Ohio-3961, 859 N.E.2d 990
(officer trained in the detection of marijuana may rely on smell to justify search for marijuana).
 {¶ 18} Under these circumstances, Officer Mabry had a reasonable basis for conducting an investigative stop, and any motion to suppress the evidence ultimately found as a result of that stop would not have been successful. Consequently, appellant *Page 8 
could not have suffered any prejudice from his trial counsel's failure to pursue the motion to suppress, even assuming that this decision fell outside the wide range of reasonable trial strategy.
 {¶ 19} Consequently, we overrule appellant's first assignment of error.
 {¶ 20} In his second assignment of error, appellant argues that the trial court erred when it joined the two indictments for a single trial. Crim.R. 13(A) provides that a court "may order two or more indictments * * * to be tried together, if the offenses * * * could have been joined in a single indictment[.]" Crim.R. 8(A) provides that "offenses may be charged in the same indictment * * * if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."
 {¶ 21} Generally, joining multiple criminal offenses for a single trial is favored under the law. State v. Franklin (1991),62 Ohio St.3d 118, 580 N.E.2d 1. However, the law also recognizes that joinder of multiple offenses for a single trial may result in prejudice that would require separate trials. Crim.R. 14 states that "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses * * * or by such joinder for trial together of indictments, * * * the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."
 {¶ 22} The state can use one of two methods to counter a claim that joinder of offenses for a single trial resulted in prejudice to the defendant. First, there can be no finding of prejudice if evidence of one offense could be introduced as "other acts" evidence under Evid.R. 404(B) in a trial of the other offense. Second, the state can refute *Page 9 
a claim of prejudice by showing that evidence of the offenses joined for trial is simple and direct, with no danger of confusion to jurors.State v. Brinkley, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, citing State v. Lott (1990), 51 Ohio St.3d 160, 555 N.E.2d 293.
 {¶ 23} Under Evid.R. 404(B), evidence of other crimes may be admitted for purposes "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In this case, evidence that appellant had the Beretta in his possession on April 9, 2005 supported Willis' testimony that he saw appellant holding the same gun very soon after Harper was shot with that gun. As such, evidence that appellant had the gun in his possession would have been admissible as "other acts" evidence in his murder trial, even if the indictments had been tried separately. See State v. Martin (1985),19 Ohio St.3d 122, 483 N.E.2d 1157 ("in situations in which the state is required to show possession of a murder weapon by the defendant to establish its case, it is permissible to allow into evidence proof of other criminal acts committed by the defendant which tend to establish possession, even though such evidence incidentally tends to prove commission of crimes other than the one with which the defendant is charged").
 {¶ 24} Furthermore, the evidence regarding the separate offenses was simple and direct. Each of the two cases turned on straightforward evidence regarding whether appellant had the Beretta in his possession at each of the two scenes, and there was no danger that the jury could have been confused by the manner in which the cases were presented.
 {¶ 25} Consequently, we overrule appellant's second assignment of error. *Page 10 
 {¶ 26} In his third assignment of error, appellant argues that his convictions were not supported by the evidence, and were against the manifest weight of the evidence. As set forth in State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, when reviewing the sufficiency of the evidence supporting a criminal conviction, an appellate court must examine the evidence submitted at trial to determine whether such evidence, if believed, would convince an average person of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. at paragraph 2 of the syllabus. See, also, Jackson v. Virginia (1979), 443 U.S. 307,319, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 27} This test raises a question of law and does not allow the court to weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,485 N.E.2d 717. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson, supra, at 319. Accordingly, the reviewing court does not substitute its judgment for that of the fact finder. Jenks, supra, at 279.
 {¶ 28} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. However, in engaging in this weighing, the appellate court must *Page 11 
bear in mind the fact finder's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraph 1 of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 29} Although appellant's third assignment of error appears to address his convictions in both cases, his argument is directed entirely at the testimony of Willis, which relates only to those charges stemming from the October 10, 2004 shooting death of Harper. Appellant was acquitted on the charge that he committed murder by purposely causing Harper's death, but convicted on the charge that he committed murder by causing Harper's death as the proximate result of his commission of felonious assault, as well as on the underlying charge of felonious assault and the charge that he had a weapon while under a disability at the time of the incident.
 {¶ 30} No testimony was offered directly implicating appellant as the person who shot Harper. Willis testified that he was upstairs asleep when he was awakened by the sound of gunshots and someone telling him to come downstairs. Willis further testified that he came downstairs and saw Harper sitting on the floor leaning against the wall, having apparently been shot, and appellant holding a black 40-caliber handgun, which he identified as the Beretta handgun that was entered into evidence. The Beretta was subsequently found in the vehicle underneath the seat in which appellant was sitting. Two shell casings and one bullet fragment discovered at the scene of the shooting were found to have been fired from the Beretta. *Page 12 
 {¶ 31} Viewing this evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded that appellant was the person who shot Harper, and from this evidence the jury could have reasonably concluded that appellant was guilty of felonious assault, and therefore was guilty of murder for proximately causing Harper's death by the commission of that felonious assault. As such, there was sufficient evidence to support appellant's convictions.
 {¶ 32} As for the claim that appellant's convictions were against the manifest weight of the evidence, appellant argues that Willis' testimony could not have been believed. Appellant bases this argument on the facts that appellant was an admitted drug dealer, left the scene after the shooting without attempting to provide or obtain any medical attention for Harper, and only approached the police out of fear that he might be implicated in Harper's death.
 {¶ 33} The trier of fact is in the best position to observe the manner and demeanor of the witnesses, to consider any inconsistencies in the testimony, and to decide whether the witnesses' testimony is credible.State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503. Consequently, while an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires a reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037.
 {¶ 34} Given the jury's superior position of determining Willis' credibility, we cannot say that the evidence weighed heavily against the convictions, or that the jury clearly lost its way in reaching its conclusion. Consequently, appellant's convictions were not against *Page 13 
the manifest weight of the evidence, and we overrule appellant's third assignment of error.
 {¶ 35} Having overruled appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 KLATT and McGRATH, JJ., concur. *Page 1