[Cite as *State v. Drake*, 2017-Ohio-755.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 16AP-258 |
| v. | : | (C.P.C. No. 14CR-6277) |
| Frederick D. Drake, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on March 2, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Michael P. Walton*. **Argued:** *Michael P. Walton*.

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Plaintiff-appellant, the State of Ohio, appeals from a Franklin County Court of Common Pleas decision granting the motions to suppress filed by defendant-appellee, Frederick D. Drake ("Drake"). For the following reasons, we reverse the judgment of the trial court.

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} A Franklin County Grand Jury indicted Drake with one count of improperly handling firearms in a motor vehicle, in violation of R.C. 2923.16. Drake entered a plea of not guilty and filed two motions to suppress, seeking to exclude both a recovered firearm and his statements to the officers.

{¶ 3} The trial court held an evidentiary hearing. The state called two police officers to testify: John D. Narewski and Kevin George. Officer Narewski testified that, while on patrol on September 3, 2014, he and Officer George were driving to check the parking lot of the Prime Ultra Lounge because there had been numerous arrests in the past. It was routine for them to check the area on Wednesday evenings because the bar

was usually very crowded due to a special on chicken wings. As the officers approached the parking lot, Officer Narewski noticed two males sitting in a black Chevy Tahoe. Officer Narewski later identified Drake as the one in the driver's seat. The officers parked on the street. As they exited the cruiser, the individuals walked towards the bar entrance. Officer George testified that they walked "quickly, hurriedly" which drew his attention to them. (Sept. 23, 2015 Tr. at 56.) Officer Narewski stated that Drake began to return to the Tahoe but then Officers Brammer and Baase arrived in a marked cruiser and Drake "did an about-face and walked directly back towards the bar, kept looking over his shoulder at the other [Columbus Police Department] cruiser on the lot." (Tr. at 13.)

{¶ 4} Officer Narewski walked over to the Tahoe and could "smell a strong odor of burnt marijuana coming from the motor vehicle." *Id.* The officer looked in the driver's side window of the Tahoe, and "observed a digital scale with a bag of marijuana sitting atop the cup holder located by the center console." *Id.*

{¶ 5} At that point, the officers walked to the front of the bar where Drake was standing and asked the two men to return to the Tahoe. Drake asked "why" and Officer Narewski informed him what he observed in the vehicle. (Tr. at 14.) When they returned to the vehicle, Officer Narewski informed Drake he was going to pat him down for weapons. As he was conducting the pat down, Drake "blurted out, hey, I don't have anything on me other than a bag of marijuana" and Officer Narewski recovered a bag of marijuana and the keys to the Chevy Tahoe in Drake's front right pants pocket. (Tr. at 15.) When asked why Officer Narewski searched Drake, he responded:

> Basically, his statement that he had the marijuana on him. Usually, because of the drugs in the car, we believed there could possibly be weapons. I conducted a pat-down of his person for weapons. During that pat-down, he blurted out that he had some marijuana on him.

(Tr. at 15-16.)

{¶ 6} Officer Narewski testified he did not make contact with either Drake or the other individual before he saw the marijuana and the digital scale in the Tahoe. (Tr. at 17.) Officer Narewski informed Drake that he was going to search the vehicle and asked him if there was anything else in the car. Drake initially answered, "no," but then replied

there was a gun in the car. (Tr. at 18.) Officer Narewski searched the vehicle and found a Taurus 45-caliber handgun in the armrest of the driver's side door. (Tr. at 18.)

{¶ 7} Officer George also testified. He was driving the cruiser and Officer Narewski was the passenger. He initially saw Drake and the other individual walking to the front of the bar as he exited the cruiser. Drake started to walk back to the Tahoe but "did an about-face and walked back" to the front of the bar. (Tr. at 57.) Officer George thought it was odd that Drake kept looking over his shoulder at the other cruiser that had arrived. Officer Narewski walked up to the Tahoe and advised Officer George that he saw marijuana and a digital scale. As Officer George approached the passenger side of the Tahoe, he smelled burnt marijuana from inside the vehicle and saw a digital scale and a bag of marijuana on the cup holder next to the center console. *Id.*

{¶ 8} Officer George stated that Officers Narewski and Brammer detained Drake and then he and Officer Narewski searched the vehicle. Inside the car were marijuana, the digital scale, "a couple marijuana roaches in an after-market ashtray, and then there was also a gun in the door handle of the driver's door." (Tr. at 58.)

{¶ 9} As Drake was standing next to a cruiser, Officer George walked by him. Drake said, "what is up, George?" (Tr. at 59-60.) Officer George testified that he had prior contact with Drake. Officer George then replied, "how are you?" (Tr. at 60.) Then Officer George testified that Drake stated: "[Y]ou know me, I am not from around here. I am carrying that gun for protection. I don't know anyone around here. I bought it off the streets." (Tr. 60-61.) Officer George replied, "good luck." The officers then transported Drake to Columbus Police headquarters.

{¶ 10} At the conclusion of the hearing, the trial court took the matter under advisement. The trial court filed a journal entry granting the motions to suppress.

## II. ASSIGNMENTS OF ERROR

{¶ 11} The state filed a timely notice of appeal and raised the following assignments of error:

> [I.] THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE.

[II.] THE TRIAL COURT ERRED IN HOLDING THAT THE GOOD FAITH EXCEPTION TO THE EXCLUSIONARY RULE DID NOT APPLY.

[III.] THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION TO SUPPRESS HIS STATEMENT.

## III. STANDARD OF REVIEW

{¶ 12} A trial court's decision resolving a motion to suppress presents an appellate court with "a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The factual component requires some deference to the trial court's findings, as that court was "in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). However, after accepting those facts as true, an appellate court "must independently determine, whether the facts satisfy the applicable legal standard, without giving any deference to the conclusion of the trial court." *State v. Holland*, 10th Dist. No. 13AP-790, 2014-Ohio-1964, ¶ 8, citing *Burnside* at ¶ 8.

## III. ANALYSIS

{¶ 13} By its first assignment of error, the state contends that the trial court erred in granting Drake's motion to suppress evidence. Drake argued that the officers seized the firearm found inside the Tahoe in violation of the Fourth Amendment. The trial court found that the officers did not have an individualized reasonable, articulable suspicion to approach Drake based upon *Terry v. Ohio*, 392 U.S. 1 (1968).

{¶ 14} Both the Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, and Article I, Section 14 of the Ohio Constitution prohibit the government from conducting warrantless searches and seizures. Unless an exception applies, a warrantless search or seizure is "per se unreasonable." *State v. Hannah*, 10th Dist. No. 15AP-212, 2015-Ohio-4964, ¶ 12. One of those exceptions is an investigative stop based on *Terry*.

{¶ 15} If a police officer reasonably concludes that an individual is engaged in criminal activity, the police officer may stop and investigate the unusual behavior even

without probable cause to arrest. *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991), citing *Terry* at 21. "[T]he officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Id.* Since *Terry*, "courts have concluded that an objective and particularized suspicion that criminal activity was afoot must be based on the entire picture - - a totality of the surrounding circumstances." *Andrews* at 87, citing *United States v.* Cortez, 449 U.S. 411, 417-18 (1981).

{¶ 16} There is no question that the officers here did not have a warrant. The trial court focused on the issue whether the officers had an individualized reasonable, articulable suspicion to approach Drake. The state argues that the officers had probable cause to believe Drake had committed, or was in the process of committing, a drug crime. Drake argues that the officers lacked probable cause or a reasonable, articulable suspicion for the search and that the seizure was the product of an unreasonable and unlawful detention. Here, the officers did not need an individualized reasonable, articulable suspicion to approach Drake. The officers had probable cause.

{¶ 17} Ohio courts have held that the smell of marijuana from a car, by a person qualified to recognize the smell, is sufficient to establish probable cause to search the car. *State v. Moore*, 90 Ohio St.3d 47 (2000), syllabus; *State v. Coston*, 168 Ohio App.3d 278, 2006-Ohio-3961, ¶ 18 (10th Dist.). Further, the officers testified they saw marijuana and a digital scale inside the car in plain view.

{¶ 18} In this case, there was competent and credible evidence to support the finding that the arresting officers had probable cause. Officer Narewski testified that he did not speak to or detain Drake until after he smelled marijuana coming from the Tahoe and saw the digital scale and marijuana inside the Tahoe. It was only after he saw the digital scale and the marijuana that Officer Narewski asked Drake to return to the Tahoe. Officer Narewski also testified that none of the other officers made contact with Drake before Officer Narewski saw the digital scale and the marijuana. (Tr. at 17.) Thus, the officers had probable cause to believe that Drake had just committed, or was in the process of committing, a drug crime and the trial court erred in finding that there was no evidence presented during the hearing that demonstrated that the officers believed

criminal activity was afoot, and in suppressing the evidence. We sustain the state's first assignment of error.

{¶ 19} For ease of discussion, we will next address the state's third assignment of error in which they argue that the trial court erred in granting Drake's motion to suppress his statement. Drake argued in his motion that his statements to Officer George should be suppressed because he was not given his *Miranda* warnings. The trial court did not discuss any statements made by Drake or provide any analysis for granting the motion to suppress Drake's statements.

{¶ 20} The Fifth Amendment to the United States Constitution provides a privilege against self-incrimination. *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984). As part of this protection, the United States Supreme Court has held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Thus, *Miranda* warnings are required when a suspect is subjected to custodial interrogation." *State v. Edmond*, 10th Dist. No. 15AP-574, 2016-Ohio-1034, ¶ 11. *Miranda* defines custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 444.

{¶ 21} In this case, Drake was not subject to a custodial interrogation. Even though the officers did not advise Drake of his *Miranda* rights, it was not necessary to do so. "*Miranda* does not affect the admissibility of 'volunteered statements of any kind.' " *State v. McGuire*, 80 Ohio St.3d 390, 401, quoting *Miranda* at 478. Drake volunteered that he had marijuana in his pocket and it was not in response to questioning from the officers. Drake initiated the discussion with Officer George, and again, Drake volunteered the information concerning the firearm. The question, "how are you" under these facts, cannot be construed as a question seeking incriminating information or as coercion.

{¶ 22} Drake initiated the discussion with Officer George and volunteered the information. Thus, although Drake was in custody, he was not subjected to custodial interrogation and not entitled to *Miranda* warnings. *See McGuire*. Drake's Fifth Amendment rights were not violated. The state's third assignment of error is sustained.

{¶ 23} By the second assignment of error, the state contends that the trial court erred in holding that the good faith exception to the exclusionary rule did not apply. In light of our resolution of the state's first and third assignments of error, the state's second assignment of error is rendered as moot.

## IV. CONCLUSION

{¶ 24} Having sustained the state's first and third assignments of error, and rendered as moot the second assignment of error, the judgment of the Franklin County Court of Common Pleas granting Drake's motions to suppress are reversed, and this cause is remanded for further proceedings in accordance with law and consistent with this decision.

*Judgment reversed;*
*cause remanded.*

BROWN and SADLER, JJ., concur.

_____