THE STATE OF OHIO, APPELLANT, *v.* MATHEWS, APPELLEE.

[Cite as State v. Mathews (1976), 46 Ohio St. 2d 72.]

(No. 75-859—Decided April 28, 1976.)

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Thomas J. Sammon,* for appellant.

*Mr. Floyd B. Oliver,* for appellee.

CORRIGAN, J. The appellant, state of Ohio, maintains that the search of Wanda Mathews' purse was "incident" to her lawful arrest for being in a policy house; and, alternatively, that the search was made pursuant to the "stop and frisk" procedures enunciated in *Terry v. Ohio* (1968), 392 U. S. 1.

The right of police officers to search a suspect pursuant to a lawful arrest has been a long-recognized ex-

ception to the Fourth Amendment warrant requirement. *Preston* v. *United States* (1964), 376 U. S. 364; *Draper* v. *United States* (1959), 358 U. S. 307; *Jones* v. *United States* (1958), 357 U. S. 493; *Carroll* v. *United States* (1925), 267 U. S. 132.

There have been, however, divergent tests for determining the reasonablness of warrantless searches incident to lawful arrests.

In a line of cases beginning with *Agnello* v. *United States* (1925), 269 U. S. 20, and culminating in *United States* v. *Rabinowitz* (1950), 339 U. S. 56, the United States Supreme Court based its holdings on a determination of the reasonableness of the search under the circumstances in each case.

In a second line of cases beginning with *Trupiano* v. *United States* (1948), 334 U. S. 699, and culminating in *Chimel* v. *California* (1969), 395 U. S. 752, the court recognized the importance of the Fourth Amendment protection afforded by a prior requirement that officers procure a warrant before a magistrate, based upon probable cause. *Chimel* overrules *Rabinowitz* in that it requires a determination not as to the reasonableness of the search, but whether it was reasonable not to have procured a warrant under the circumstances of a particular case.

Specifically, *Chimel* held that it is reasonable not to have procured a warrant only where the search is incident to a lawful arrest and the search is limited to the arrestee's person and the area within the immediate control of the arrestee, in order to discover and remove weapons and to seize evidence to prevent its destruction or concealment.

More recently, in *United States* v. *Robinson* (1973), 414 U. S. 218, the court expanded the limitations set forth in *Chimel*. The majority held that a full search of the person incident to a lawful custodial arrest is not only an exception to the warrant requirement of the Fourth Amendment but is also a "reasonable" search under that amendment.

The court elaborated that the full custodial search

was not limited—as in the case of a stop-and-frisk search incident to an investigative stop based on less than probable cause to arrest—to conducting a frisk of outer clothing only, and removing such weapons an officer may reasonably believe a suspect has in his possession, even though the arrest was for a traffic violation. Rather, since a custodial arrest based upon probable cause is a reasonable intrusion under the Fourth Amendment, the authority to search, based upon the need to disarm and discover evidence, does not depend on what a court might later decide was the possibility in a particular arrest situation that weapons or evidence would, in fact, be found on the person. The court stated further that the Fourth Amendment was not violated by the search in that case notwithstanding the fact that the officer had no reason to suspect that the defendant was armed and no further evidence of the crime in question could have been obtained by a search.

Applying the *Robinson* decision to the present case, it is apparent that, if appellee Wanda Mathews' arrest was lawful, then the search of the purse clutched under her arm, and under her immediate control, was not unreasonable.

The crime for which appellee Wanda Mathews was arrested, as stated by the arresting police officer, was for being in a policy house. The provisions of R. C. 2915.02 and 2915.03 cover gambling and operating a gambling house, respectively, and prohibit, among other things, the knowing possession of gambling tools, facilitation of gambling operations, and permitting the use of premises for the use of gambling. The premises in which the arrest was made was the apartment of the defendant and her husband. Defendant was charged with possession of policy slips and this charge was later nolled.

Violation of these sections constitutes a misdemeanor of the first degree for a first offense.

Police officers in Ohio, under R. C. 2935.03, have authority to arrest and detain persons found violating the laws of this state, or ordinances of municipal corporations, until a warrant can be obtained. This language, "found

violating," has been interpreted to authorize a warrant-less arrest for misdemeanor only where the offense has been committed in the officer's presence. *State* v. *Lewis* (1893), 50 Ohio St. 179. See, also, *Carroll* v. *United States, supra* (267 U. S. 132).

In the present case, the record at the suppression hearing establishes that, when Detective Fulton entered apartment No. 2, which belonged to Wanda Mathews and her husband, he observed numerous books of policy slips, charts for bets, and an adding machine. Just before that, when he detained the woman who had climbed out of the apartment window with policy slips in her hand, she told him she had just placed a bet. Clearly, the officer observ-ed the commission of a misdemeanor by Wanda Mathews.

The appellee argues that her occupancy of the bath-room in no way connected her with the gambling operation. Subsequent testimony adduced at the hearing established that the apartment was rented under a fictitious name but that the light bill for the apartment was addressed either to the appellee or her husband.

The crime in question being one of possession of gam-bling equipment and the permissive use of premises for gam-bling, the occupants of the premises are clearly the par-ties subject to the proscriptions of the statutes. The mere fact that the appellee was in another room at the time does not enable her to escape liability for arrest.

Detective Fulton's entry into the bathroom was not a search of the apartment. The toilet flushing alerted him to the presence of another occupant of the apartment. His entry into the bathroom did not result in the produc-tion of any other evidence. Rather, it was necessary to the actual or constructive seizure or detention of the appel-lee, thus effecting an arrest. *Jenkins* v. *United States* (C. A. 10, 1947), 161 F. 2d 99; *Alter* v. *Paul* (1955), 101 Ohio App. 139.

The only search complained of in this case was that of the appellee's purse. This custodial search was incident to appellee's lawful arrest under the rule announced in *United States* v. *Robinson, supra* (414 U. S. 218).

The only other possible constitutional infringement arising out of this arrest was the original entry of Detective Falzone and the uniformed officers into the apartment. When Detective Fulton entered, the door was open and the other officers were inside. The appellee testified that she was in the bathroom at the time that the officers entered the apartment. Evidence at the suppression hearing was only that Detective Fulton walked in the open door and observed gambling equipment. Detective Fulton's observations outside and the information received over the police radio broadcast gave him reasonable grounds to investigate the activities at the apartment. Upon entering the front door, he observed the commission of a misdemeanor. Under the circumstances, he had authority to arrest the occupants of the apartment and to conduct a custodial search incident to a lawful arrest.

The judgment of the Court of Appeals is, therefore, reversed and the cause remanded to the trial court for further proceedings in accordance with this opinion.

*Judgment reversed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN and P. BROWN, JJ., concur.

STERN, J., dissenting. This case presents a single issue: whether the police officer had "probable cause" to arrest the defendant, and, in turn, to search her handbag.

In *State v. Woodards* (1966), 6 Ohio St. 2d 14, 20, 215 N. E. 2d 568, this court stated the familiar law under the federal and state Constitutions that "[a]n arrest * * * must be based upon reasonable cause or probable cause" (citations omitted). Ordinarily, a valid arrest of a person must be pursuant to a warrant. An authorized law enforcement officer is permitted to make an arrest without warrant, but only where probable cause justifying the arrest exists, on the basis of factual and practical considerations upon which reasonable and prudent persons act. The evidentiary foundations for an arrest without warrant

cannot be any less strict than the basis for an arrest with a warrant. *Wong Sun* v. *United States* (1963), 371 U. S. 471, 479. If an arrest is not based upon probable cause, it is unlawful, and any evidence seized incident to the arrest will be inadmissible at trial. The litmus test is whether the questioned evidence has been seized as a result of a constitutionally forbidden arrest, or whether the actions of the arrested person are deemed to furnish probable cause sufficient to purge the taint upon warrantless arrests.

It is undisputed law that in order to establish probable cause to justify an arrest, the officer must have a genuine and bona fide belief that the subject was violating the law, and there must be reasonable grounds for that belief. Good faith on the part of the officer, standing alone, falls short of the constitutional requirement. See *Henry* v. *United States* (1959), 361 U. S. 98.

In this case, the officers were present at the premises because a report had been made to the police department that shots were heard which emanated from this location, though nothing in the record made on the motion to suppress indicates that the defendant herself was engaged in using the guns found in her handbag in any manner. Upon entering the premises, the police officer found an elderly female coming out of a window from the apartment. The officer discovered that this lady had in her possession numbers or policy slips. Once inside the apartment, the officers observed certain paraphernalia used in writing and computing policy slips. The officers heard the commode in the bathroom being flushed, and one officer entered the bathroom. He saw the defendant sitting on the toilet, and her purse on the floor beside her. The officer directed her to leave the bathroom and give him her purse. She left the bathroom and, after continued insistence, relinquished her purse. The officer claims that he placed the defendant under arrest for being in a policy house before he opened her purse. However, the defendant claims she was not arrested until after her purse was searched. Under these cir-

cumstances, the issue of when the defendant was arrested is not a crucial one. Accepting the officer's statement of the time of arrest, there was at that time only suspicion, and not a scintilla of evidence, that the defendant was engaged in activity in violation of the law. Incessant flushing of a toilet cannot be inferred as somehow incriminatory of possessing policy slips, or of some other offense, though it might be sufficiently suspicious to warrant police investigation, especially where possession of drugs is suspected.

In this case, these circumstances only raised suspicion, but did not provide evidence of probable cause. Indeed, there is some question of what law the defendant "probably" violated. The state cites no applicable municipal gambling ordinance, and in fact in neither the Court of Appeals nor in this court has the prosecution indicated the particular violations for which probable cause is to be found. R. C. 2915.02 forbids engaging in bookmaking, or gambling, or knowingly facilitating gambling.[1] But the mere

---

[1] R. C. 2915.02 provides:

"(A) No person shall:

"(1) Engage, in bookmaking, or knowingly engage in conduct which facilitates bookmaking;

"(2) Establish, promote, or operate, or knowingly engage in conduct which facilitates any scheme or game of chance conducted for profit;

"(3) Knowingly procure, transmit, exchange, or engage in conduct which facilitates the procurement, transmission, or exchange of, information for use in establishing odds or determining winners in connection with bookmaking or with any scheme or game of chance conducted for profit;

"(4) Engage in betting or in playing any scheme or game of chance as a substantial source of income or livelihood;

"(5) With purpose to violate division (A)(1), (2), (3), or (4) of this section, acquire, possess, control, or operate any gambling device.

"(B) For purposes of division (A)(1) of this section, a person facilitates bookmaking if he in any way knowingly aids an illegal bookmaking operation, including without limitation placing a bet with a person engaged in or facilitating illegal bookmaking. For purposes of division (A)(2) of this section, a person facilitates a scheme or game of chance conducted for profit if he in any way knowingly aids the conduct or operation of any such scheme or game, including without limitation playing any such scheme or game.

fact that the defendant was in the apartment is not of itself evidence that she was gambling, operating the gambling house, or otherwise facilitating gambling operation. Her presence was suspicious, but again, suspicion alone does not furnish probable cause.

Similarly, R. C. 2915.03[2] forbids the operation of a gambling house, but at the time the officer arrested the defendant, he had no reason to believe that the defendant owned or leased the apartment.

The testimony of the arresting officer is to the effect that he believed that mere presence in a policy house was an offense. We need not question the officer's good faith, but there is no state law to that effect, and no municipal ordinance is cited to us. The defendant's presence in an apartment where gambling paraphernalia were observed was the only basis for the arrest. That circumstance was suspicious to be sure, but it did not provide probable cause that the defendant had violated any law. Compare, for example, *Sibron* v. *New York* (1968), 392 U. S. 40, and *Henry* v. *United States, supra* (361 U. S. 98).

From the facts of this case and the applicable federal and state law, I can find no justification for the arrest of this defendant without a warrant. It is my view that the judgment of the Court of Appeals should be affirmed.

---

"(C) This section does not prohibit conduct in connection with gambling expressly permitted by law,

"(D) Whoever violates this section is guilty of gambling, a misdemeanor of the first degree. If the offender has previously been convicted of any gambling offense, gambling is a felony of the fourth degree."

[2]R. C. 2915.03 provides in pertinent part:

"(A) No person, being the owner or lessee, or having custody, control, or supervision of premises, shall:

"(1) Use or occupy such premises for gambling in violation of Section 2915.02 of the Revised Code;

"(2) Recklessly permit such premises to be used or occupied for gambling in violation of Section 2915.02 of the Revised Code.

"(B) Whoever violates this section is guilty of operating a gambling house, a misdemeanor of the first degree. If the offender has previously been convicted of a gambling offense, operating a gambling house is a felony of the fourth degree."