On November 23, 1997, an altercation involving three women occurred, the dispute pertaining to money owed by Rachel Park to Keichi Lam. Ms. Lam is the adult daughter of the defendant in this case, Lai Yam Chan. Ms. Park is a Taiwanese native who taught Japanese at the "Chinese School." This school was comprised of a group of such teachers who taught various Asian languages to members of the local Asian and Asian-American community. The courses were taught on Sundays in a public school building rented for this purpose.
The native language of Ms. Chan and Ms. Lam is Mandarin Chinese; while Ms. Lam is fairly literate in English, her mother is not. Keichi Lam enrolled in Ms. Park's Japanese course but decided not to continue after the first class on September 21, 1997. As a result, Ms. Lam sought a refund of the amount she paid for the course.
After Ms. Lam decided she had waited long enough for the refund, the dispute finally peaked on November 23, when Ms. Lam and her mother confronted Ms. Park at the school. As the confrontation escalated, police were summoned. Ms. Lam was ultimately arrested and charged with criminal trespass, assault and resisting arrest. Her mother, Lai Yam Chan, was also charged with criminal trespass and assault. She too was cited for resisting arrest, but not her own; she was charged with interfering with the arrest of her daughter. Additional facts are detailed below in our discussion of the assignments of error.
In September 1998, Ms. Chan's case was tried to a jury, with the assistance of an interpreter, on the charges of assault and resisting arrest.[1] The jury acquitted her of the assault charge but found her guilty of resisting arrest. For this second-degree misdemeanor, the trial court sentenced Ms. Chan to ninety days' incarceration with sixty days suspended (subject to completion of one year's probation) and one day credited; and, ordered her to pay a $150 fine plus court costs.[2]
Lai Yam Chan (hereinafter "appellant") has timely appealed her conviction for resisting arrest, assigning two errors for our consideration:
ASSIGNMENT OF ERROR I:
 The trial court erred when it entered judgment against the defendant when the evidence was insufficient to sustain the convictions and the convictions were not supported by the manifest weight of the evidence.
ASSIGNMENT OF ERROR II:
 The trial court erred when it denied defendant's Rule 29 motion at the close of the state's case, the close of the defense case, and the close of the evidence.
Collectively, appellant's two assignments of error challenge both the sufficiency and manifest weight of the evidence. Although phrased in different terms, the second assignment of error raises the sufficiency issue as well. See Crim.R. 29. Accordingly, we address the assignments of error jointly.
Preliminarily, we set forth the similar, yet distinct, standards by which we are bound in reviewing the assignments of error.
"The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. In Thompkins, the court explained at length the distinctions between the two standards:
 With respect to sufficiency of the evidence, " 'sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486 * * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, * * * citing Jackson v. Virginia (1979), 443 U.S. 307 * * *.
When reviewing the sufficiency of the evidence to support a conviction, an appellate court must review the record to determine "whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In Jenks, the Supreme Court set forth the stringent standard of review to be applied in a sufficiency analysis:
 The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
In contrast, as explained in Thomkins, supra, a manifest weight analysis is slightly different:
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487 * * *. Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence
sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42 * * *. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175 * * * ('The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.').
Pursuant to the foregoing standards, we examine the record in a light most favorable to the prosecution to determine if the prosecution proved beyond a reasonable doubt each element of the offense charged, and/or whether the jury "lost its way" in convicting appellant such that a manifest miscarriage of justice occurred.
Appellant was convicted of resisting arrest pursuant to Columbus City Code Section 2321.33(A). In order to convict appellant of resisting arrest, the prosecution was required to prove that she "recklessly or by force * * * resist[ed] or interfere[d] with a lawful arrest of * * * another."
Evidence adduced at trial establishes the following facts. The dispute over the refund due Ms. Lam began in late September 1997, when Ms. Lam informed Ms. Park that she did not want to continue taking Ms. Park's Japanese class. According to Rachel Park, she mailed a refund check to Ms. Lam on October 16. Ms. Chan soon called Ms. Park to tell her she had not received the check.
On November 16, appellant and her daughter appeared at the school and disrupted Ms. Park's Japanese class. The "principal" of the school, Mr. I-Hsing Chang, was made aware of the problem. Arrangements were ultimately made for Ms. Park to stop payment on the first check and to send a second check to Ms. Lam by certified mail. The second check was sent out and Ms. Lam received it on Friday, November 21. However, apparently Ms. Lam was unable to negotiate the check because it was made payable to an inaccurate name.
On Sunday, November 23, Ms. Park's final confrontation with appellant and Ms. Lam occurred. According to Mr. Chang, appellant and her daughter appeared at the school and demanded a meeting with Ms. Park to resolve the dispute. Mr. Chang indicated that they would need to wait until after 3:30 that day because he was busy with a Chinese speech contest taking place throughout the school. Appellant indicated that she would talk to Ms. Park directly.
According to Ms. Park, the two women approached her in a classroom where she was attending her child's speech contest. Ms. Park testified that appellant grabbed her by the arm and stated, in Mandarin Chinese, " 'I want the money. Give me the money back.' " With appellant still holding her arm, the two women left the classroom. Ms. Lam was outside the classroom, and grabbed Ms. Park's other arm. According to Ms. Park, appellant and her daughter pushed at her from both sides as they moved down the hallway toward the front door.
Before reaching the front door, the women pushed Ms. Park down another hallway. Ms. Park then called "911" on her cellular phone. Appellant struck at Ms. Park's hand, causing her to drop the phone. As she leaned down to try to pick up her phone, someone from behind shoved her to the ground. For approximately ten to fifteen minutes, Ms. Park repeatedly asked appellant and her daughter to leave.
When the three women exited a restroom, they encountered Mr. Chang. He saw appellant and her daughter arguing with Ms. Park, who was calling the police for a second time. In Mr. Chang's opinion, Ms. Park appeared to be nervous and frightened. Because of the disruption, he asked the women to wait outside until the police arrived.
Columbus Police Officers Joseph Podolski and Donald Zaleski soon arrived in a patrol car. They attempted to mediate the dispute. According to Officer Podolski, he was able to communicate with Ms. Lam in English. Both officers testified that Ms. Lam was translating for her mother. The officers eventually suggested to Ms. Lam that she file a civil action to resolve the matter. When the officers asked Mr. Chang if appellant and her daughter were still welcome at the school, Mr. Chang indicated that they were not.
Mr. Chang, along with the officers, then repeatedly asked the two women to leave the premises. As the women continued to refuse to leave, Ms. Lam became increasingly aggressive. According to Officer Podolski, he took out his handcuffs, showed them to Ms. Lam, and told Ms. Lam that if she did not leave the premises, he would take her to jail. When she still did not leave, the officers approached her in order to handcuff her.
According to the officers, appellant then attempted to prevent the arrest of her daughter. Specifically, appellant grabbed the arms of both officers and tried to pull them away from her daughter. She continued interfering with them up until the moment Ms. Lam was placed in the cruiser.
After Ms. Lam was placed in the cruiser, appellant was given yet another opportunity to leave; she still refused. The officers placed her under arrest without further incident, charging her with assault, criminal trespass and resisting arrest (only that of her daughter's).
Turning to the elements of resisting arrest as charged here, the first element we consider is the requisite mental state, "recklessly," as defined in R.C. 2901.22(C):
 A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
Appellant essentially contends that her inability to speak English, and the resulting inability to comprehend the nature of the situation, precludes a finding that she acted recklessly. We disagree. As aptly observed by the Supreme Court of Ohio in State v. Darrah (1980), 64 Ohio St.2d 22, 26, an arrest, "in the technical, as well as the common sense,
signifies the apprehension of an individual or the restraint of a person's freedom in contemplation of the formal charging with a crime." (Emphasis added.)
The testimony establishes that appellant's daughter was translating, at least to some extent, what was being said by the police officers during and after their unsuccessful attempts to resolve the dispute. In addition, appellant observed the officers, wearing traditional uniforms and arriving in a standard police cruiser, attempting to restrain her daughter with handcuffs. Common sense dictates that appellant simply disregarded, with at least indifference, the nature of her conduct and the circumstances surrounding the officers' readily apparent attempt to arrest her daughter. Thus, the finding of recklessness is supported by sufficient evidence and is not against the manifest weight of the evidence.
Although "interfere with" is not statutorily defined, the parties agree that the trial court's definition in its jury instructions was appropriate. Applying the common usage of the phrase as pertinent here, "to interfere with" means to hinder or impede.
Appellant contends that her relatively diminutive size (5'3" in height, weighing approximately 105 pounds) physically prevented her from "actually" interfering with or hindering the officers as they were arresting her daughter.
There was more than ample evidence that appellant interfered with the officers as they were arresting her daughter. Appellant placed her body in between the officers and her daughter, and then appellant grabbed at the officers' arms as they were trying to handcuff her daughter. The fact that appellant is of slight physical stature as compared to the officers is irrelevant. Contrary to appellant's implication, the interference with the arrest need not be successful.
The final element of the offense charged is the "lawful arrest of another." The substance of appellant's argument is actually threefold, notwithstanding her framing her assignments of error only in terms of sufficiency and manifest weight. First, she argues that the record, pursuant to both a sufficiency and manifest weight analysis, does not support the finding that the underlying arrest of Keichi Lam was lawful. Appellant then essentially incorporates into that assigned error an entirely separate claim — that the trial court's instruction to the jury on this element was erroneous.
We turn first to the sufficiency and manifest weight portion of the argument. Based upon a careful consideration of the record, we find that the determination that Keichi Lam was lawfully arrested is supported by sufficient evidence and is not against the manifest weight of the evidence.
Obviously, by statutory definition, a conviction for resisting arrest necessarily requires a finding that the underlying arrest is lawful. See City of Columbus v. Nickles
(1986), 29 Ohio App.3d 281; State v. Hendren (1986), 110 Ohio App.3d 496. R.C. 2935.03(A) sets forth an officer's authority to make a lawful warrantless arrest:
 A * * * municipal police officer * * * shall arrest and detain, until a warrant can be obtained, a person found violating, within the limits of the political subdivision * * * a law of this state, an ordinance of a municipal corporation, or a resolution of a township. (Emphasis added.)
When the alleged offense is a misdemeanor, the language "found violating" has been generally construed to mean "only where the offense has been committed in the officer's presence." State v. Mathews (1976), 46 Ohio St.2d 72, 75-76. InColumbus v. Lenear (1984), 16 Ohio App.3d 466, 468, the court explained the general standard to be applied in such cases:
 * * * What is required for a valid warrantless arrest is not that the officer have absolute knowledge that a misdemeanor is being committed in the sense of possessing evidence sufficient to support a conviction after trial, but, rather, that he be in a position to form a reasonable belief that a misdemeanor is being committed, based upon evidence perceived through his own senses. In other words, if, based upon circumstances perceivable by his own senses, a reasonable person would be justified in concluding that a misdemeanor is being committed in his presence, then, the warrantless arrest is valid.
See, also, State v. Miller (1990), 70 Ohio App.3d 727; State v.Reymann (1989), 55 Ohio App.3d 222.
In addition to the authority to arrest those "found violating" a law in the officer's presence, R.C. 2935.03(B) confers authority upon officers to make warrantless arrests for certain enumerated misdemeanors committed outside their presence:
 (1) When there is reasonable ground to believe that an offense of violence * * * has been committed within the limits of the political subdivision * * *, a peace officer * * * may arrest and detain until a warrant can be obtained any person whom the peace officer has reasonable cause to believe is guilty of the violation. (Emphasis added.)
Given the evidence detailed above, the officers had reason to believe that appellant and her daughter had committed criminal trespass, a nonviolent misdemeanor, and that they continued the offense in their presence. However, assuming arguendo that a criminal trespass occurred prior to their arrival and thus outside their presence, the record contains sufficient evidence to support a finding that the officers reasonably believed that appellant and Ms. Lam committed misdemeanor assault, statutorily designated an "offense of violence." R.C.2901.01(A)(9). As discussed infra, there were unrefuted allegations that appellant and her daughter had assaulted Rachel Park before the officers arrived at the scene.
Based upon the foregoing, the determination that the underlying arrest of Ms. Lam was lawful is supported by sufficient evidence and is not against the manifest weight of the evidence.
As indicated above, appellant also takes issue with the trial court's jury instructions on the "lawful arrest" element of the offense. With respect to the challenged jury instructions, appellant faces two initial obstacles on appeal, as noted by the prosecution. The first hurdle facing appellant is defense counsel's failure to object to the challenged portion of the jury instructions. Therefore, as appellant concedes, our review is limited to a plain error standard. Crim.R. 30; Crim.R. 52. In State v. Underwood (1983), 3 Ohio St.3d 12, syllabus, the Supreme Court of Ohio set forth the applicable standard of review:
 The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise. (State v. Long, 53 Ohio St.2d 91 * * *, approved and followed.)
In addition to the waiver problem, of perhaps more significance is appellant's technical failure to comply with the appellate procedural requirement that any claimed error must be assigned and argued separately. Accordingly, pursuant to App.R. 12 and App.R. 16, this court may "disregard" such a claim. In its brief, the prosecution urges us to do so. However, notwithstanding this procedural flaw, the issue presented by the challenged jury instruction is significant and appropriate for resolution by this court. In fact, both counsel explicitly sought guidance from this court on this issue.
The disputed instruction is patently wrong. The trial judge instructed the jury that he had decided that the underlying arrest of appellant's daughter was lawful and, accordingly, that the jury need not consider that issue. In so doing, the trial court improperly extracted determination of this crucial element from the jury. The prosecution does not debate the rudimentary due process concept requiring the prosecution to prove every element of the offense charged. See State v. Wilson
(1996), 74 Ohio St.3d 381, 394, citing In re Winship (1970),397 U.S. 358. It is within the province and duty of the trier of fact to determine if such elements have been proven. Appellant did not waive her right to a jury determination as to any element. The trial court erred in taking away from the factfinder's consideration an element of the offense charged.
Notwithstanding the potential gravity of the error in the abstract, we must conclude that, under these particular circumstances, the trial court's erroneous instruction was harmless beyond a reasonable doubt. Our examination of the record reveals more than ample evidence that the underlying arrest was lawful. Constrained by a plain error analysis, we cannot say that the outcome would have been different had this element been submitted to the jury for resolution.
The assignments of error are overruled.
Having overruled the assignments of error, the judgment of the trial court is affirmed.
Judgment affirmed.
LAZARUS, P.J., and DESHLER, J., concur.
[1] In a pre-trial motion, defense counsel unsuccessfully moved to dismiss the criminal trespass charge, arguing that the complaint was fatally flawed because of its omission of a crucial element of the offense ("without privilege to do so") and because it cited a nonexistent section of the Columbus City Code. Notwithstanding the trial court's refusal to grant the defense motion, it ultimately granted a motion made later by the prosecution based upon the defective affidavit's failure to allege that element.
[2] The trial court overruled a defense motion seeking a stay of execution of the sentence pending appeal, ordering her taken into custody "forthwith." Defense counsel then filed a similar written motion seeking to continue appellant's recognizance bond. The trial court eventually set a $15,000 cash or surety appeal bond. This court granted appellant's motion for a stay, conditioned upon her posting an appeal bond in a reduced amount.