{¶ 1} Appellant, Cindy L. Schwab appeals the decision of the Mahoning County Court No. 4 denying her motion to suppress evidence obtained from her purse following her arrest for domestic violence. She also contends that statements made by the prosecutor in his closing argument constitute prosecutorial misconduct and amount to a denial of her right to due process of law.
 {¶ 2} In fact, the evidence recovered from Appellant's purse was recovered pursuant to a lawful search incident to arrest. Furthermore, Appellant failed to provide a copy of the trial transcript, and, therefore, we must assume that there was sufficient evidence to convict her on the drug possession charge. As a consequence, both of Appellant's assignments of error are overruled and the judgment of the trial court is affirmed.
 Facts {¶ 3} The facts surrounding Appellant's arrest are uncontroverted. On December 11, 2007, officers from the Austintown Police Department responded to a report of domestic violence at Appellant's residence. (2/13/08 Tr., p. 11.) Because it was a cold evening, one of the officers asked Appellant if she would prefer to sit in the patrol car while her boyfriend was interviewed. After speaking with one of the officers, Appellant's boyfriend completed a domestic violence complaint against her. (2/13/08 Tr., p. 13.)
 {¶ 4} The officers concede that, while they were interviewing her boyfriend, Appellant sat in the patrol car with her purse. (2/13/08 Tr., p. 18.) In order to effect Appellant's arrest for domestic violence, Sergeant William Hoetzel removed her from *Page 2 
the patrol car, handcuffed her, and placed her back in the patrol car. (2/13/08 Tr., pp. 11, 19.)
 {¶ 5} Prior to returning her to the patrol car, Hoetzel removed her purse from the car and placed it on the trunk or the roof. (2/13/08 Tr., pp. 19, 20.) After transitioning her into the car, Hoetzel proceeded to search her purse, and discovered an old pill bottle with no label on it. (2/13/08 Tr., pp. 14-15.) When asked why he looked in the purse, he responded, "[n]o weapons, no contraband." (2/13/08 Tr., p. 15.) He conceded the purse was out of Appellant's reach when he conducted the search. (2/13/08 Tr., p. 21.) He further conceded that he had no reasonable suspicion that Appellant had committed any other crime, and that she did not consent to the search. (2/13/08 Tr., pp. 22, 25.)
 {¶ 6} Hoetzel testified that the pill bottle contained "multiple pills of a wide variety." Appellant, without inquiry from Hoetzel, informed him that the pills belonged to her mother. (2/13/08 Tr., pp. 15-16.) As a result of the search, Appellant was charged with two counts of possession of a dangerous drug, in violation of R.C. 4729.51(C)(3), one count based upon Appellant's alleged possession of Darvocet, and the second count based upon her alleged possession of Amoxicillin, in addition to one count of domestic violence, in violation of R.C. 2919.25.
 {¶ 7} Appellant filed a motion to suppress the evidence recovered from her purse, but the trial court concluded that the pills were discovered during a valid inventory search. Although the drug charge involving Amoxicillin was dismissed and *Page 3 
Appellant was acquitted on the domestic violence charge, she was convicted on the remaining drug charge.
 First Assignment of Error {¶ 8} "THE COURT ERRED IN FAILING TO SUSTAIN THE DEFENDANT'S MOTION TO SUPPRESS THE SEARCH OF DEFENDANT'S PURSE AND FAILING TO SUPPRESS THE FRUITS OF THAT SEARCH."
 {¶ 9} Appellant contends that her constitutional rights were violated when Hoetzel searched her purse after she had been handcuffed and the purse had been removed from her possession.
 {¶ 10} When reviewing a motion to suppress, the appellate court must determine whether the trial court's findings are supported by competent, credible evidence. State v. Lloyd (1998), 126 Ohio App.3d 95, 100,709 N.E.2d 913. "In a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses."State v. Hopfer (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321, quoting State v. Venham (1994), 96 Ohio App.3d 649, 653. A reviewing court must accept the trial court's factual findings and the trial court's assessment of witness credibility, but must independently determine as a matter of law whether the trial court met the applicable legal standard. State v. Sharpe (June 30, 2000), 7th Dist. No. 99CA510, *2.
 {¶ 11} Both the Fourth Amendment to the U.S. Constitution and Section 14, Article I of the Ohio Constitution require government officials to procure a warrant *Page 4 
based on probable cause prior to conducting searches and seizures. In light of this constitutional authority, warrantless searches have been held to be per se unreasonable, subject to a number of well-recognized exceptions. Katz v. United States (1967), 389 U.S. 347, 357,88 S.Ct. 507. One such exception is a search incident to a lawful arrest.
 {¶ 12} In defining the scope of a search incident to an arrest, the United States Supreme Court held in Chimel v. California (1969),395 U.S. 752, 89 S.Ct. 2034, that a police officer making a lawful custodial arrest may search the arrestee and the area within the arrestee's immediate control to ensure that no weapons are present and to prevent the destruction or concealment of evidence. Id. at 762-763,89 S.Ct. 203. In U.S. v. Robinson (1973), 414 U.S. 218, 94 S.Ct. 467, the United States Supreme Court held that a search incident to arrest is not only an exception to the warrant requirement but also should be considered a "reasonable" search pursuant to the Fourth Amendment of the U.S. Constitution.
 {¶ 13} The Ohio Supreme Court adopted the rationale articulated inRobinson when it decided State v. Mathews (1976), 46 Ohio St.2d 72,346 N.E.2d 151. In State v. Mathews, the police responded to a report of gunshots fired at a residential address. Upon entering the apartment, they discovered books and policy slips as well as other betting paraphernalia. One of the officers heard a toilet being flushed, and asked who was in the bathroom. Mathews responded that she was using the bathroom, and the officer instructed her to stop flushing the toilet, but she did not comply. *Page 5 
 {¶ 14} As a consequence, the officer instructed her to step out of the bathroom. When she emerged, she was clutching her purse under her arm. The officer informed her that she was being arrested for being in a policy house, but she refused to relinquish the purse to the officers. After several requests, she surrendered the purse. When one of the officers opened the purse, he discovered three loaded .38 caliber handguns. Mathews was subsequently charged with three counts of carrying a concealed weapon.
 {¶ 15} In reviewing the constitutionality of the search, the Ohio Supreme Court conducted a two prong test: first, the Court determined that the arrest was lawful, and second, the Court determined that the search of the purse, which was under Mathews' immediate control at the time of the arrest, was reasonable. Id. at 75, 346 N.E.2d 151.
 {¶ 16} The Court premised its decision on the reasonableness of the search on the United States Supreme Court's opinion inRobinson, supra, wherein the Court held that a search incident to arrest does not violate the Fourth Amendment even where the officer had no reason to suspect that a defendant is armed or where no further evidence of the crime in question could have been obtained by the search. Id.
 {¶ 17} Ohio appellate courts, as well as the Sixth Circuit Court of Appeals, have broadly construed the rule first announced inChimel, supra, to include any search incident to arrest, even where the searched bag or compartment is no longer within reach of the arrestee, or the arrestee is restrained. *Page 6 
 {¶ 18} For instance, in Sharpe, supra, the defendant was seen selling drugs from a backpack he was carrying on his shoulder. After DEA agents conducted two controlled buys, a third agent, who had witnessed the series of drug buys, arrested the defendant. While the arresting officers patted down the defendant and handcuffed him, his backpack was placed on the hood of the patrol car. The defendant's backpack was then emptied onto the hood of the patrol car, and drugs and money were found.
 {¶ 19} In concluding that the search incident to arrest was reasonable in Sharpe, we cited with favor a Fourth Circuit Court of Appeals case for the proposition that, "justification [for the search] does last a reasonable time after the officers obtain exclusive control of the container that is to be searched," Sharpe at *3, quoting U.S. v.Nelson, 102 F.3d 1344, 1346 (4th Cir. 1996), and U.S. v. Johnson, 846 F.2d 279 (5th Cir. 1988), for the rule of law that a bag or compartment need only be shown to be in the exclusive control of the defendant at the time of arrest in order to be susceptible to a warrantless search. Id. at 283.
 {¶ 20} After reviewing several cases with similar fact patterns, we ultimately concluded that:
 {¶ 21} "A proper search incident to arrest does not dissipate merely because the container is removed from the arrestee before the search is conducted. To hold otherwise would essentially eliminate the search incident to arrest exception to the warrant requirement in cases like this as a law enforcement officer would only be entitled to conduct a search while the arrestee maintained control of the container." *Page 7 
(Citations omitted.) Sharpe at *5, see also United States v.Romero, 452 F.3d 610, 619-620, (6th Cir. 2006) (officers could lawfully search a nightstand a couple of feet from the defendant when he was arrested, despite the defendant being restrained prior to the search);State v. Henderson, 11th Dist. No. CA2002-08-075, 2003-Ohio-1617, at ¶ 14 (search of a shaving kit a "few feet away" from the defendant at the time of his arrest was constitutional, although the defendant was handcuffed and lying on the floor when the search occurred); State v.Washington (May 1, 2001), 10th Dist. No. 00AP-663, (search of the purse that a defendant carried at the time of her arrest was constitutional, even though the defendant was secured in the backseat of a police cruiser when the search occurred).
 {¶ 22} A review of the foregoing case law demonstrates that the "search incident to arrest" exception has been broadly interpreted to insulate searches conducted after the defendant has been arrested from constitutional challenge. Appellant has failed to distinguish the facts of the case sub judice from the facts in the foregoing cases. Accordingly, Appellant's first assignment of error is overruled.
 Second Assignment of Error {¶ 23} "THE TRIAL COURT ERRED AND THE PROSECUTOR COMMITTED PROSECUTORIAL MISCONDUCT FOR STATEMENTS MADE DURING THE STATE'S CLOSING ARGUMENTS."
 {¶ 24} Appellant contends that, but for a prejudicial outburst by the prosecutor during his closing argument, stating that drugs "are rampant throughout the streets," *Page 8 
because people are selling their medication, she would not have been convicted. (Partial Trial Tr., p. 27.)
 {¶ 25} "A prosecutor's remarks constitute misconduct if the remarks were improper and if the remarks prejudicially affected an accused's substantial rights." State v. Williams, 99 Ohio St.3d 439,2003-Ohio-4164, 793 N.E.2d 446, ¶ 44, citing State v. Smith (1984),14 Ohio St.3d 13, 14, 14 OBR 317, 470 N.E.2d 883. Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. State v. Lott (1990), 51 Ohio St.3d 160, 166, 555 N.E.2d 293.
 {¶ 26} "The touchstone of analysis `is the fairness of the trial, not the culpability of the prosecutor.'" State v. Gapen, 104 Ohio St.3d 358,2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92, quoting Smith v. Phillips (1982),455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78. An appellate court must "view the state's closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial." State v. Treesh
(2001), 90 Ohio St.3d 460, 466, 739 N.E.2d 749.
 {¶ 27} Although Appellant provided a transcript of the closing arguments, she failed to include a complete trial transcript in the record on appeal. In order to determine whether the prosecutor's remarks prejudiced Appellant, we must determine whether, absent the improper remarks, the jury would have acquitted Appellant on the drug charge. Because there is no trial transcript, we cannot determine whether, based upon the evidence adduced, she received a fair trial. *Page 9 
 {¶ 28} "It is axiomatic that an appellant has the duty to provide the reviewing court with the record necessary to support his arguments on appeal." State v. Dumas, 7th Dist. No. 06 MA 36, 2008-Ohio-872, ¶ 14. "Further, `[w]hen a defendant fails to provide a complete and proper transcript, a reviewing court will presume regularity of the proceedings in the trial court[.]'" (Citations omitted.) Id. Therefore, we must presume that there was sufficient evidence adduced at trial to support the guilty verdict and that Appellant was not prejudiced by the alleged error.
 {¶ 29} Based upon Appellant's failure to provide a complete trial transcript, her second assignment of error is overruled. Judgment of the Mahoning County Court No. 4 is affirmed.
Donofrio, J., concurs; see concurring opinion.
Vukovich, P.J., concurs. *Page 10