[Cite as *State v. Frazee*, 2015-Ohio-4786.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellant* | : | Appellate Case No. 26699 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-4240 |
| | : | |
| STEVEN FRAZEE | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellee* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of November, 2015.

. . . . . . . . . .

MATHIAS H. HECK, JR., by DYLAN SMEARCHECK, Atty. Reg. No. 0085249, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellant

JAMES M. CALHOUN, II, Atty. Reg. No. 0090173, Assistant Montgomery County Public Defender, 117 South Main Street, Suite 400, Dayton, Ohio 45422
     Attorney for Defendant-Appellee

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-appellant, the State of Ohio, appeals from the decision of the Montgomery County Court of Common Pleas suppressing heroin that was discovered in the pocket of a coat worn by defendant-appellee, Steven Frazee. The State contends the heroin should not have been suppressed because it was discovered during a search incident to a lawful arrest. In addition, the State contends the heroin would have been inevitably discovered during routine jail booking procedures. We agree with the State; therefore, the judgment of the trial court will be reversed and remanded for further proceedings.

## Facts and Course of Proceedings

{¶ 2} On February 13, 2015, Frazee was indicted by the Montgomery County Grand Jury for one count of possessing heroin in amount less than one gram in violation of R.C. 2925.11(A). The charge arose from Frazee's encounter with Montgomery County Sheriff's Deputy John Eversole after he discovered heroin inside Frazee's coat pocket. Frazee pled not guilty to the possession charge and then filed a motion to suppress the heroin as evidence at trial. The trial court then held a hearing on the matter, during which Eversole was the only witness to testify. Eversole provided the following testimony.

{¶ 3} At approximately 10:30 a.m. on November 14, 2014, Eversole was patrolling an area in Jefferson Township, Montgomery County, Ohio, when he observed a male and female, later identified as Frazee and Morgan Bryant, walking eastbound on 3rd Street. Eversole decided to stop his cruiser and speak with Frazee and Bryant because he did

not recognize them as being from the area, and because the area was known to have a high level of criminal activity. When Eversole pulled up next to Frazee and Bryant, he introduced himself and asked for permission to speak with them, to which they both agreed. Eversole then asked Frazee and Bryant if they would provide him with their identification information. In response, both Frazee and Bryant provided Eversole with their Ohio identification cards. Eversole then ran their information through his computer to check for any outstanding warrants. Upon running their information, Eversole discovered that Frazee had an outstanding warrant for his arrest.

{¶ 4} Eversole advised Frazee that he had an outstanding warrant for his arrest and ordered him to place his hands behind his back so he could be handcuffed. In response, Frazee asked Eversole if he could first remove one of the two coats he was wearing. Because the coats were very bulky, Eversole allowed Frazee to remove his exterior coat so that Frazee could be handcuffed more comfortably. Frazee then asked Eversole if he could give the coat he removed to Bryant. Eversole refused Frazee's request and instead had Frazee place his coat on the trunk of the cruiser, which was one foot away. Eversole testified that he did not allow Frazee to give the coat to Bryant for officer safety reasons.

{¶ 5} Thereafter, Eversole placed Frazee in handcuffs and conducted a thorough search of Frazee's person as a search incident to arrest. Eversole searched Frazee at the rear of the cruiser while Bryant was standing at the front of the cruiser. During the search, another officer arrived on the scene to assist Eversole in watching Bryant. Once Eversole confirmed that there were no weapons or contraband on Frazee's person, he then placed Frazee in the back of his cruiser. Eversole then retrieved and searched the

coat that Frazee had been wearing.

{¶ 6} During the search of the coat, Eversole retrieved a cellophane package from the left front-breast pocket. Eversole squeezed the package and felt a hard object inside. From his training and experience, Eversole suspected that narcotics were inside the package. As a result, Eversole opened the package and discovered a chunky brown substance that he believed to be, and was later confirmed to be, heroin. After Eversole discovered the heroin, Frazee asked if he could take the coat with him to jail, to which Eversole permitted after removing the heroin. Eversole then placed the coat at the front of his cruiser with Frazee's other belongings and transported him to jail. Eversole indicated that Frazee was booked at the Montgomery County Jail without incident.

{¶ 7} Upon hearing Eversole's testimony, the trial court granted Frazee's motion to suppress the heroin on grounds that the warrantless search of the coat did not qualify as a search incident to arrest. In so holding, the trial court relied on Frazee's argument that the coat was not on Frazee's person and not within his control at the time it was searched. The State now appeals from this decision, raising the following single assignment of error for review.

> BECAUSE THE HEROIN IN FRAZEE'S JACKET WAS FOUND DURING A SEARCH INCIDENT TO A LAWFUL ARREST AND WOULD HAVE INEVITABLY BEEN DISCOVERED DURING ROUTINE JAIL BOOKING PROCEDURES, THE TRIAL COURT ERRED IN FAILING TO ADMIT THE EVIDENCE.

{¶ 8} Under its sole assignment of error, the State argues that the trial court erred in suppressing the heroin found in Frazee's coat pocket because it was discovered during

a search incident to a lawful arrest. Specifically, the State argues that the search incident to arrest exception applies despite the fact that Frazee did not have control over the coat while it was being searched, as the State maintains it only matters that the coat was in Frazee's control at the time of his arrest. The State also argues that even if the search of Frazee's coat does not qualify as a search incident to arrest, the heroin would have been inevitably discovered by law enforcement during a routine inventory search of the coat when Frazee was booked into jail.

## Standard of Review

{¶ 9} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

## Search Incident to Arrest

{¶ 10} Under the Fourth Amendment, a search absent a warrant is per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576

(1967). One such exception is for searches incident to a lawful arrest. *Chimel v. California*, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The search incident to arrest exception to the warrant requirement "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." (Citations omitted.) *Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). Pursuant to this exception, an officer making a lawful arrest may conduct a warrantless search of the arrestee's person and of the area "within his immediate control." *Chimel at* 763.

{¶ 11} The area within a person's immediate control includes "the area from within which he might gain possession of a weapon or destructible evidence." *Id.* The Supreme Court of Ohio recently stated that "the right to search incident to arrest exists even if the item is no longer accessible to the arrestee at the time of the search. * * * As long as the arrestee has the item within his immediate control near the time of the arrest, the item can be searched." *State v. Adams*, Slip Opinion No. 2015-Ohio-3954, ___ N.E.3d ___, ¶ 183, citing *United States v. Romero*, 452 F.3d 610, 619 (6th Cir.2006) and *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir.2001).

{¶ 12} The recent decision in *Adams* partially involves the search of a jacket that yielded evidence of a homicide. The search occurred in 1985 when three officers went to the homicide victim's duplex to search her second-floor apartment. The occupant of the first floor apartment, Bennie Adams, allowed the officers inside the common area of the duplex to conduct a search. When the officers discovered that the victim's apartment was locked, they knocked on Adams' apartment door and asked to use his phone so they could call the owner of the duplex and request a key to the victim's apartment. In

response, Adams allowed the officers inside his apartment. While one of the officers was using the phone, the other officer asked Adams if anything suspicious had been happening lately and whether he was alone. Just after Adams told the officers that he was alone in the apartment, the officers heard a loud bump that sounded like a door hitting a wall. Two of the officers then went to a back bedroom to investigate and found a man named Horace Landers hiding behind a door. *Id.* at ¶13-18.

{¶ 13} The officers recognized Landers as having an outstanding misdemeanor warrant and immediately arrested and handcuffed him. Because Landers did not have on a shirt, and it was cold outside, one of the officers grabbed a jacket for him off the floor. The jacket was about three or four feet away from where the officers had found Landers. As one of the officers searched the jacket for weapons, Landers told the officer that the jacket belonged to Adams. Meanwhile, the officer searching the jacket felt a hard object in the pocket and pulled it out. The object was the ATM card of the homicide victim. Also in the pocket of the jacket was Adams' welfare card. The officers immediately arrested Adams, and after further investigation, they found more evidence pointing to Adams as the killer; however, the homicide investigation went cold in 1986. *Id.* at ¶ 19-25, 63. It was not until 2007, when the case was reopened and DNA evidence was obtained, that Adams was charged and convicted of aggravated murder. *Id.* at ¶ 65-73. In appealing his conviction to the Supreme Court of Ohio, Adams disputed the legality of the search that resulted in the discovery of the victim's ATM card. *Id.* at ¶179.

{¶ 14} Adams argued that the search of the jacket pocket could not be justified by concerns regarding officer safety, given that Landers was already handcuffed and unable to reach the jacket. However, in response, the Supreme Court indicated that "the right

to search incident to arrest exists even if the item is no longer accessible to the arrestee at the time of the search. * * * As long as the arrestee has the item within his immediate control near the time of the arrest, the item can be searched." (Citations omitted.) *Adams,* Slip Opinion No. 2015-Ohio-3954, ___ N.E.3d ___ at ¶ 183.

**{¶ 15}** Adams also argued that the United States Supreme Court's decision in *Gant*, 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485, should apply. In *Gant*, police officers conducted a warrantless search of a vehicle incident to arrest after the occupant was handcuffed and locked in a patrol car, and the officers discovered cocaine. *Gant* at 336. "The United States Supreme Court held that the search was unreasonable and that police officers may search a vehicle incident to arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search (or if another Fourth Amendment exception applies)." *Adams* at ¶185, citing *Gant* at 351.

**{¶ 16}** The Supreme Court of Ohio indicated that it did not have to determine whether the search of Adams' jacket was proper under *Gant*, because the search predated *Gant,* and "*Gant* does not apply retroactively to a pre-*Gant* search that was undertaken in good-faith reliance on the binding precedents at the time." *Id.* at ¶ 186, citing *Davis v. United States*, ___ U.S. ___, 131 S.Ct. 2419, 2434, 180 L.Ed.2d 285 (2011). Therefore, the Supreme Court held that the controlling case was *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which permitted the warrantless search of a jacket in a vehicle after the occupants had all been removed. *Adams* at ¶ 186, citing *Belton* at 462-463. Accordingly, the court held that "[u]nder *Belton*, the search of Adams's jacket pocket in conjunction with the arrest of Landers was constitutional." *Adams* at ¶ 186.

{¶ 17} While *Adams* declined to fully address the application of *Gant*, the court indicated that the search of Adams' jacket incident to Lander's arrest would likely be proper under *Gant* since the jacket was within Adams' reach. *Adams,* Slip Opinion No. 2015-Ohio-3954, ___ N.E.3d ___ at ¶ 186. However, we note that in *Adams*, the jacket searched was just within the immediate area of the arrestee at the time of the arrest as opposed to being worn on the arrestee's person as in the present case. We stress that *Gant* does not address the search of a person; rather, *Gant* involved the search of the area from which the defendant was arrested, specifically, the defendant's vehicle. *Gant* at 336. In *Adams*, the court did not discuss whether the holding in *Gant* should be extended to cases that do not involve the search of a vehicle incident to arrest. Because the holding in *Gant* is narrowly confined to the search of a vehicle incident to arrest, we decline to extend it to the search in the present case, as this case involves the search of an item that was on Frazee's person.

{¶ 18} In so holding, we will follow the principle recently cited by the Supreme Court of Ohio stating that "the right to search incident to arrest exists even if the item is no longer accessible to the arrestee at the time of the search. * * * As long as the arrestee has the item within his immediate control near the time of the arrest, the item can be searched." (Citations omitted.) *Adams* at ¶ 183*; see, e.g., State v. Sharpe*, 7th Dist. Harrison No. 99 CA 510, 2000 WL 875342, *5 (June 30, 2000) (search of arrestee's backpack that he was wearing on his shoulder at the time of his arrest was a lawful search incident to arrest even though the arresting officer searched the backpack after it had been removed from arrestee's possession and while the arrestee was in the cruiser); *State v. Washington,* 10th Dist. Franklin No. 00AP-663, 2001 WL 436062, *3 (May 1,

2001) (search of purse after arrestee was arrested and placed in a police cruiser was lawful search incident to arrest because arrestee had control of purse at the time of her arrest); *compare State v. Myers*, 119 Ohio App.3d 376, 380-381, 695 N.E.2d 327 (2d Dist.1997) (search of defendant's purse after she was arrested and handcuffed was not a lawful search incident to arrest because at the time of the defendant's arrest the purse was laying on the table and not on her person nor within the area of her immediate control).

{¶ 19} A search that is conducted pursuant to a search incident to arrest may extend to the personal effects of an arrestee. *State v. Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, ¶ 13, citing *State v. Mathews*, 46 Ohio St.2d 72, 75, 346 N.E.2d 151 (1976). This includes containers found on the arrestee's person. *United States v. Robinson*, 414 U.S. 218, 223-24, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (upholding search of closed cigarette package on arrestee's person); *State v. Jones*, 112 Ohio App.3d 206, 678 N.E.2d 285 (2d Dist.1996) (opening packages removed from arrestee's ankles to inspect their contents was a proper search incident to a lawful arrest).

{¶ 20} In this case, it is undisputed that Frazee was lawfully arrested pursuant to a warrant for his arrest. It is also undisputed that Frazee was wearing the coat that the heroin was found in at the time he was stopped and detained by Eversole. After Eversole advised Frazee that he was under arrest, Eversole permitted Frazee to remove the coat and place it on the cruiser immediately before Eversole handcuffed Frazee and searched his person. Therefore, the record clearly establishes that the jacket was worn by Frazee at the time of his arrest, and thus was in Frazee's "immediate control near the time of his arrest." *See Adams,* Slip Opinion No. 2015-Ohio-3954, ___ N.E.3d ___ at ¶ 183; *Sharpe*

at *5 ("the mere fact that a backpack was momentarily placed on the hood of the police cruiser prior to the actual search is inconsequential, as the backpack was only placed a few feet away from appellee and the search occurred within moments of the point in time it was removed from appellee's shoulder").   In following *Adams* and similar precedents, we find that the search of Frazee's coat and its contents falls under the scope of a search incident to arrest, as the search incident to arrest exception applies even when an item is not accessible to the arrestee at the time of the search, and the item only needs to be in the arrestee's immediate control near the time of his arrest, such as the case here.

### Inventory Search and Inevitable Discovery Doctrine

{¶ 21} Even if the search of Frazee's coat and its contents did not qualify as a search incident to arrest, we agree with the State's argument that the heroin would still be admissible because it would have been inevitably discovered by law enforcement during a routine inventory search when Frazee was booked into jail.   Under the inevitable discovery doctrine, evidence obtained unconstitutionally is admissible if it "would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Perkins*, 18 Ohio St.3d 193, 196, 480 N.E.2d 763 (1985).   "[T]he burden is on the prosecution to demonstrate, within a reasonable probability, that law enforcement would have discovered the evidence in question apart from the unlawful conduct."   *State v. Coston*, 168 Ohio App.3d 278, 2006-Ohio-3961, 859 N.E.2d 990, ¶ 17 (10th Dist.), citing *Perkins* at 196.

{¶ 22} Frazee contends the State cannot rely on the inevitable discovery doctrine because the State failed to present evidence establishing that Frazee's coat would have

been subject to an inventory search, as Eversole failed to testify regarding the inventory procedure.

{¶ 23} We note that "it is reasonable for police to search any container or article on a defendant's person * * * in accordance with established inventory procedures." *Smith*, 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949 at ¶ 13, citing *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). In *State v. Combs*, 2d Dist. Montgomery No. 22346, 2008-Ohio-2883, the officers who appeared at a suppression hearing failed to testify regarding the procedure used for inventory searches of an arrested person and their personal effects. *Id.* at ¶ 6. Nevertheless, despite this lack of testimony, we held that:

> [I]t is sufficiently clear that inventory searches of arrested persons and the personalty that they intend to bring with them into the county jail are a customary and typical procedure in Montgomery County. Furthermore, for obvious reasons of safety, the police are not obligated to return an item of personalty to a lawfully arrested individual sitting in a police cruiser without having first inspected it. A wallet can hide any number of items that could be hazardous to police, such as a small pocket-knife or razor blade. Finally, even had the search of the wallet been conducted at the county jail by jail employees, the search inevitably would have revealed that the wallet contained contraband. Thus, the search was a valid administrative inventory search pursuant to *Illinois v. Lafayette* (1983), 462 U.S. 640, 103 S.Ct. 2605.

*Combs* at ¶ 6.

{¶ 24} In this case, the record indicates that Frazee requested to bring his coat with him to the Montgomery County Jail. Because it is customary and typical in Montgomery County for the arrestee and their personal effects to be subject to an inventory search, the heroin inside Frazee's coat would have been inevitably discovered when he was booked into jail. In following *Combs*, we find the inevitable discovery doctrine applies even without specific testimony from Eversole discussing the inventory procedure.

**Conclusion**

{¶ 25} The trial court erred in suppressing the heroin found inside Frazee's coat pocket, as the heroin was lawfully discovered through a search incident to arrest, and also would have been inevitably discovered during an inventory search. Accordingly, the State's sole assignment of error is sustained and the judgment of the trial court is reversed and remanded for further proceedings.

. . . . . . . . . . . . .

FROELICH, P.J., concurs in judgment.

DONOVAN, J., concurring:

{¶ 26} In my view, the majority embraces too expansive a view of the search incident to arrest exception by utilizing broad language which is unnecessary. I would not rely upon the *Adams* case, as the suspect therein was initially only in the immediate area of the jacket, it was not on his person when the police encountered him. I also conclude it is wrong to rely upon an inevitable discovery exception which is wholly undeveloped on this record.

**{¶ 27}** Under *Robinson*, officers may presume that a particular arrestee – even one arrested for a nonviolent traffic offense – is armed. 414 U.S. at 235, 94 S.Ct. 467, 38 L.Ed.2d 427. But officers may *not* presume that this arrestee can access items safely reduced to law enforcement's exclusive possession and control – that is an entirely different presumption, which the Supreme Court has never approved. *See United States v. Chadwick*, 433 U.S. 1, 15, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) ("Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest."), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

**{¶ 28}** The Supreme Court has always described *Robinson* searches – that is, searches of *the person* incident to arrest – in extremely narrow terms. *Robinson* clearly permits a search "of an arrestee's pockets," but leaves open the question of what other "physical items" might be searchable under this exception.

**{¶ 29}** However, the coat searched in this case is a personal item which was on Frazee's person immediately prior to his physical arrest. It lay on the hood of the cruiser which did not alter its status as a personal effect. Since it was taken into custody as part of Frazee's person, his ability to reach the coat while he was in the cruiser is irrelevant. Furthermore, *Gant* does not restrict the lawful search of Frazee's coat merely because the coat was not within his immediate reach.

**{¶ 30}** Lastly, it would appear the trial court went astray in adopting flawed legal

analysis as proposed by Frazee in his post-hearing brief.  The conclusion that "Deputy Eversole acquiesced to the search incident to arrest exception" is without legal and factual support in this record.

**{¶ 31}** Finally, for reasons distinguishable from those upon which the majority relies, I would reverse.

. . . . . . . . . .

Copies mailed to:

Mathias H. Heck, Jr.
Dylan Smearcheck
James M. Calhoun, II
Hon. Dennis J. Langer