THE STATE OF OHIO, APPELLEE, *v.* LITZ, APPELLANT.

(No. 82AP-237—Decided December 16, 1982.)

*Mr. Michael Miller,* prosecuting attorney, and *Ms. Joyce S. Anderson,* for appellee.

*Mr. James Kura,* county public defender, and *Ms. Barbara J. Slutsky,* for appellant.

McCORMAC, J. Defendant-appellant, Robert Litz, has appealed his conviction by a jury, of murder, asserting the following assignments of error:

1. "The trial court erred when it allowed the prosecutor, over objection of defense counsel, to cross-examine appellant with prejudicial hearsay evidence thereby denying appellant a fair trial and due process of law as guaranteed by the

Fourteenth Amendment to the United States Constitution. Additionally, it was error to refuse to permit appellant to reopen his case to call rebuttal witnesses as to the hearsay evidence."

2. "A. The trial court erred in failing to permit appellant to introduce evidence of a prior divorce decree, when the jury heard evidence regarding a divorce decree between appellant and the deceased. This denied appellant a fair trial and due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution."

2. "B. The trial court erred when it refused to give a limiting instruction, as requested, regarding the grounds upon which a divorce is granted. This denied appellant a fair trial and due process of law."

Defendant claimed self-defense to the shooting of the deceased, Betty Hayes, who was his former spouse and with whom he had a stormy relationship. According to defendant, he shot the deceased after she ran at him with a beer bottle saying she was going to kill him. He claimed that he then pulled the revolver that he carried for his protection and shot her two or three times. Defendant related a long history of violence between him and Hayes, all of which occurred during heavy drinking by one or both of the participants. Defendant claimed that he loved the deceased dearly, but he was afraid of her when she was drinking. He cited four or five episodes when she had hit him with beer bottles or other objects, or knifed him, causing injury to him. He collaborated that testimony with hospital records and with the testimony of another man who had allegedly been injured by Hayes on several occasions when she was drinking or drunk. Defendant admitted hitting Hayes on one occasion. To sum up defendant's testimony, Hayes was almost always the aggressor in the violent confrontations between them and he was afraid of her when she was drinking heavily and became mean. He stated that

he had bought the handgun that he used to kill the deceased for protection because he went to bars where he was subject to being robbed or assaulted. Defendant admitted that Hayes had obtained a divorce from him about a year previous to this occasion on the grounds of gross neglect of duty and extreme cruelty, which was not contested by him.

The state presented evidence that defendant had shot the victim two or three times. The two body wounds were potentially lethal and the wound to the head was almost immediately lethal. The gun was held at least two feet from the victim, as there were no powder burns, and the victim had a blood alcohol test of .17 percent, which showed the consumption of eight to eleven cans of beer in about an hour period. There were no beer bottles found in a position in the room that was consistent with Hayes having charged defendant with a beer bottle prior to being shot. In fact, the pathologist testified that the shooting was consistent with the defendant shooting downward into Hayes while she was sitting in a chair. One of the spent bullets was found imbedded in the chair. Another witness for the state, who was a friend and drinking companion of both the defendant and the deceased, was in the room when the shooting occurred. She said that the first shot caused blood to come from the deceased's head, indicating that the head wound occurred first, and further testified that Hayes thus got up and fell on her stomach. This witness was unsure as to the number of shots. She said defendant jerked out the cord of the telephone in the room and that she ran for help. She testified that Hayes and the defendant were arguing before the shooting, but that Hayes had no weapon.

The prosecutor cross-examined defendant very vigorously, attempting to establish the state's version of the relationship between the parties, which was that defendant was always the aggressor and that his claims that the deceased in-

itiated the violencé and repeatedly injured him as the aggressor were untrue. In attempting to support this theory, over objection of hearsay, the prosecutor referred to a police report taken at the time defendant had testified he was stabbed in the leg and hand by the victim while sleeping. In that regard, he questioned defendant as follows:

"Q. * * * Mr. Litz, I'll show you what is the official police report concerning that incident in which you say you were stabbed. It says here by the investigating officer that the reporting person, Betty Hayes, stated that at the above time and location you, being Mr. Litz, did repeatedly attempt to tear her clothes off her —."

At this point, there was an objection based upon hearsay and a lengthy discussion, out of the presence of the jury, after which the objection was overruled. Back on the record, the prosecutor pursued the question as follows:

"Q. * * * Mr. Litz, again, let me read from this official police report in which you say you were stabbed.

"The reporting person who is Betty Hayes stated that at the above time, date and location you, Mr. Litz, did repeatedly attempt to tear her clothes off of her during the domestic quarrel, holding her down and not letting her leave the apartment and she then stated the next thing I knew I had the knife in bed.

"My question is this, Mr. Litz, when she stabbed you with the steak knife, was not you at this time in the process of giving her a beating?" (*Sic.*)

The defendant denied that version.

After further discussion of the objection, the trial court took the position that the prosecuting attorney could question the witness as to the statements by the now deceased victim contained in the police report made in 1980, which the defendant could affirm or deny.

In defendant's first assignment of error he contends that the trial court erred in permitting the prosecutor to cross-examine him about a statement the deceased allegedly made to a police officer during the investigation of the 1980 stabbing. That assignment of error is well-taken and is sustained.

If the police officer who investigated the case attempted to testify that Betty Hayes told him that the defendant was the aggressor in the stabbing, that testimony would not be admissible under any exception to the hearsay rule. In attempting to use the "official police report," as the prosecutor described the object in his hand, to ask about the hearsay statement recorded by the investigating officer as having been made by the now deceased Betty Hayes, the prosecutor was effectively permitted to bring to the attention of the jury the deceased's version of the 1980 incident and to imply to the jury that it was truthful. Defendant's denial that the 1980 stabbing occurred as the result of the manner that Hayes had allegedly described it to the investigating officer was insufficient to remove that impression. The trial court did not inform the jury that Hayes' statement, which was denied as to its truthfulness, could not be considered for the truth of the matter.

The prosecutor had stated that he might call the investigating officer to testify as to the accuracy of the statement recorded in the police report as taken from Hayes in 1980, but he did not do so, probably because he knew that the testimony was not admissible as an exception to the hearsay rule. The defense attorney sought permission of the court to introduce the testimony of two witnesses who would testify under oath that Hayes admitted to them at the time of the stabbing episode in 1980 that it was all her fault, and that she had stabbed defendant when he was in bed sleeping as he had testified. Defense counsel stated that he did not attempt to introduce this testimony initially because it was inadmissible testimony, but since the trial court had permitted a contrary statement

of Hayes to be introduced by second-hand hearsay through the police report, he felt that he was entitled to present this testimony to correct the record. This request was overruled based upon the fact that the police report was not in evidence and that there was no evidence that the statements were actually made except through the questions of the prosecutor.

The prosecutor managed to get Hayes' hearsay statement of what happened in 1980 before the jury for the truth of the matter by reading her statement impliedly for the truth thereof from an "official police report" referred to specifically as such, prior to any question of defendant. While the general rule is that cross-examination may embrace matters pertaining to direct examination, which are not necessarily admissible, such as a statement taken from the defendant without the defendant having been given *Miranda* warnings, to avoid a miscarriage of justice by defendant's suppression of the truth, the rule does not pertain to the reading of a third-party hearsay statement contained in a police report to impliedly prove the substance of the statement. The principal case relied upon by the state, *United States* v. *Talk* (C.A. 10, 1979), 418 F.2d 53, is distinguishable on the facts. In *Talk,* the state's attorney did not read the statement in the police report to the jury, did not label it an official police report, and did not recite the statement of the unavailable third-party as to the truth prior to asking defendant a question. Instead, the state's attorney asked a question about a contrary version of the episode based upon a statement from the third-party obtained in an investigation. Moreover, in *Talk,* the trial court sustained an objection to the question and instructed the jury to disregard it.

The manner in which the cross-examination and the use of the hearsay statement in the police report occurred herein was more effective than if the deceased had survived and was testifying concerning an attempted murder case where defense counsel could at least have impeached her testimony with the testimony of the two witnesses who were proffered to state that she had told them that she was completely at fault in the 1980 stabbing episode.

Defendant's first assignment of error is sustained.

In defendant's second assignment of error, he sought to reopen his case to introduce testimony that Hayes had been divorced before she married and divorced defendant, and that she had made the same charge of gross neglect of duty and extreme cruelty against her first husband. Defense counsel was attempting to establish that gross neglect of duty and extreme cruelty are grounds regularly asserted for divorce as a matter of form practice, and are not an accurate indication that the person against whom the divorce decree was granted mistreated the person who was granted the divorce.

Defendant was cross-examined about the divorce and admitted without objection that the decree was granted on the grounds of gross neglect of duty and extreme cruelty. He testified that he did not contest the divorce and he denied acts of extreme cruelty on his part.

The trial court did not abuse its discretion in refusing to permit defendant to inquire into the grounds of the first divorce of Hayes. Its relevance, if any, was substantially outweighed by the danger of confusion of the issues or of misleading the jury, see Evid. R. 403(A), and, at best, involved a collateral matter. Similarly, the trial court did not err in refusing to instruct the jury that the language contained in the divorce decree between defendant and Hayes was that used in almost every divorce decree in the state of Ohio.

Defendant's second assignment of error is overruled.

Defendant's first assignment of error is sustained and defendant's second assignment of error is overruled. The

judgment of the trial court is reversed and the case is remanded for a new trial consistent with this opinion.

*Judgment reversed and case remanded.*

WHITESIDE, P.J., and MOYER, J., concur.