[Cite as *State v. Roland*, 2017-Ohio-557.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 16AP-484 |
| v. | : | (C.P.C. No. 15CR-3809) |
| Travis D. Roland, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 16, 2017

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Barbara A. Farnbacher,* for appellee.

**On brief:** *Clark Law Office,* and *Toki Michelle Clark,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

HORTON, J.

{¶ 1} Defendant-appellant, Travis D. Roland, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of felonious assault with firearm and drive-by specifications, improper handling of a firearm, and having a weapon under a disability ("WUD"). For the following reasons, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 5, 2015, the Franklin County Grand Jury indicted appellant for felonious assault with firearm and drive-by shooting specifications, having a WUD, and improper handling of a firearm in a motor vehicle. (Indictment at 1-3.)

{¶ 3} The basic facts are as follows. Appellant has known the victim, Marquez Simpson, since Simpson was born. Appellant's sister and Simpson's mother were good friends. Simpson's mother lived with appellant's family at some point. Approximately

one month before the incident in question, a disagreement arose between appellant and Simpson involving Simpson's sister. The disagreement escalated, and eventually on July 15, 2015, appellant shot Simpson in the back. Appellant claims that Simpson had a gun, threatened appellant and his cousin, James Stephens, and that he acted in self-defense.

{¶ 4} At the scene, Simpson was in pain but was conscious and told the first responding officer that appellant shot him. The officer noted that Simpson appeared to have a gunshot wound to his back. No gun was recovered from Simpson or the scene. Simpson was carrying crack cocaine on his person. Also, a spent bullet was recovered from the scene that was determined to have not been fired from appellant's gun.

{¶ 5} Simpson was taken to Grant Hospital, where he underwent surgery. His spleen, pancreas, kidney, and some of his colon were removed. He was hospitalized for two weeks before going to a rehabilitation center for one and one-half weeks. He continues to have problems walking and bullet fragments remain in his body.

{¶ 6} Twelve days later, on July 27, 2015, Columbus Police SWAT unit officers located the vehicle appellant had used at the time of the shooting and observed him get into the vehicle's backseat. Appellant was ordered out of the vehicle and arrested. The officers recovered a loaded gun from the vehicle, located in the compartment behind the front passenger seat directly in front of appellant. A loaded magazine was also recovered from the glove box.

{¶ 7} On Monday, April 25, 2016, a jury trial commenced in Franklin County Common Pleas Court. At trial, Simpson testified that on July 15, 2015, he was with his girlfriend, Sharkila Richards, their five-month-old baby, and Richards' four-year-old nephew. On that day, Simpson and Richards first encountered the appellant on East Whittier Street near Wilson Avenue. (Tr. Vol. II at 105, 107.) He stated that appellant stopped his vehicle near him, pointed a gun at him, and said he should shoot him. (Tr. Vol. II at 107-09.) Simpson asked appellant if he was going to shoot him in front of his son. (Tr. Vol. II at 109.) Appellant had a passenger in the car with him, whom Simpson did not know, and after this encounter, appellant drove away. (Tr. Vol. II at 108, 110-11.) In an attempt to be safe, Simpson and the group headed towards his grandmother's house on Linwood Avenue. (Tr. Vol. II at 111.)

{¶ 8}    Simpson further testified that when they got to the intersection of Linwood and Stanley, he saw appellant pull up in the same vehicle. (Tr. Vol. II at 113-14.) Richards and the children began running away and appellant's passenger got out of the car and began walking towards him. (Tr. Vol. II at 114-15.) At that point, Simpson saw appellant point a gun in his direction. (Tr. Vol. II at 117-18.) Simpson turned to run away when he was shot in the back. (Tr. Vol. II at 114, 118.) He fell to the ground and was unable to move. (Tr. Vol. II at 119.)  Simpson testified that he did not have a gun or any weapons that day, while appellant had a gun both times Simpson saw him. (Tr. Vol. II at 126.) Also, Simpson claims that he never threatened appellant. *Id.*

{¶ 9}    Richards largely corroborates Simpson's testimony. She testified to seeing appellant and a passenger approach her, Simpson, their son, and her nephew at about 2:00 p.m., on that day. (Tr. Vol. II at 70, 79.) She states that appellant flashed a gun and said, "You know we stay strapped," meaning that he had a gun. (Tr. Vol. II at 75-77.) Eventually, appellant drove away, while she, Simpson, and the children headed to Simpson's grandmother's house. (Tr. Vol. II at 79-80.)  As they neared the intersection of Linwood and Stanley, she saw appellant's vehicle pull up. (Tr. Vol. II at 81.)  Richards took off running. (Tr. Vol. II at 83.)  As she ran up the street, she heard gunshots, and she heard Simpson fall to the ground and heard him yell that "Travis" just shot him. (Tr. Vol. II at 84.)  When Richards got the children to the house, she called the police. (Tr. Vol. II at 85.)  She testified that neither she nor Simpson had any weapons. (Tr. Vol. II at 86.) Richards returned to the intersection and spoke with police. *Id.* By the time she returned to the scene, Simpson had already been transported to the hospital. (Tr. Vol. II at 87.)

{¶ 10} Sergeant Dave Sicilian assisted Detective Guy Patete in the investigation of this offense. (Tr. Vol. III at 249.) Detective Sicilian interviewed appellant after he was taken into custody on July 27, 2015. (Tr. Vol. III at 254.) Sergeant Sicilian testified that appellant told him that when he encountered Simpson the second time at the corner of Stanley and Linwood, the plan was for Stephens to fight Simpson. (Tr. Vol. III at 258.) Appellant claimed that the victim pulled a gun from his pocket, held it down to his side, and turned his back to run or walk away. (Tr. Vol. III at 258-59.) Appellant then took the loaded handgun that was in the front seat right next to him and immediately fired two

shots at the victim. *Id.* Appellant alleged that Simpson also fired a shot. (Tr. Vol. III at 259.)

{¶ 11} Appellant also admitted to Sergeant Sicilian that the vehicle he was arrested in was the vehicle he had been driving when the shooting occurred, and that the gun found in the vehicle was the gun he used to shoot Simpson, and that he knew the gun worked properly. (Tr. Vol. III at 260.) Appellant also admitted that he could have avoided the incident by not going back and engaging Simpson a second time. (Tr. Vol. III at 261.)

{¶ 12} Appellant testified at trial that on July 15, 2015, he was driving around the Lockbourne area of his neighborhood with his cousin, James Stephens. (Tr. Vol. III at 299, 302.) While doing so, they encountered Simpson, who was walking with Richards, their baby son, and a four-year-old nephew. (Tr. Vol. III at 298.) At that point, Simpson put his hands in his pocket, which appellant interpreted to show that Simpson had a weapon, and said "[w]hat's up?" *Id.* Appellant responded "[f]or real?" *Id.* The conversation continued in the same vein for a short period and appellant drove off. (Tr. Vol. III at 299.)

{¶ 13} Appellant further testified that, a few minutes later, he encounters Simpson a second time near Stanley and Linwood, several blocks away, and again he stops his car. (Tr. Vol. III at 298, 300-02.) Appellant remains in the car, but Stephens exits the car with the intention of fighting Simpson. (Tr. Vol. III at 302.)  Shortly after Stephens exits the car, appellant claims to see Simpson hold up a gun and point it in Stephens and appellant's direction. (Tr. Vol. III at 304.)  Quickly, appellant lifts his own loaded gun and fires twice, striking Simpson once in the back, before Simpson can shoot either Stephens or himself. *Id.*  Appellant surmises that Simpson must have turned to run when appellant was shooting, thereby causing him to be shot in the back. (Tr. Vol. III at 306.)

{¶ 14} Appellant testified that his and Stephens lives were in danger and, therefore, he acted in self-defense, and in defense of Stephens. (Tr. Vol. III at 304-06.) Although appellant fled the scene immediately after the shooting, he opines that Richards must have removed Simpson's gun from the scene. (Tr. Vol. III at 375.)

{¶ 15} On cross-examination, appellant admitted that he had an extensive criminal record and was prohibited by law from owning or touching a firearm. (Tr. Vol. III at 289-92, 311-12.) Appellant admitted that he had a loaded firearm, which was ready to fire, on

the seat next to him when he encountered Simpson and that he fired multiple shots at him. (Tr. Vol. III at 312-13, 319, 325.) He also admitted that he could have chosen not to approach Simpson on Linwood, i.e., that he could have gone a different way or simply kept driving. (Tr. Vol. III at 314-15, 317.)

{¶ 16} The jury convicted appellant of felonious assault with a firearm specification and drive-by specification, and improper handling of a firearm.  The court convicted appellant of having a WUD.  He was sentenced to 10 years in prison. (June 1, 2016 Jgmt. Entry.)  On June 28, 2016, appellant timely filed a notice of appeal.

## II.  ASSIGNMENT OF ERROR

{¶ 17} Appellant assigns the following errors:

> [I.] THE VERDICT OF GUILTY IS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE AND IS AGAINST THE MANIFEST WEIGHT OF EVIDENCE.
>
> [II.] A CRIMINAL DEFENDANT FAILS TO GET EFFECTIVE ASSISTANCE OF COUNSEL WHERE HIS LEGAL REPRESENTATIVE FAILS [TO] FILE A MOTION TO SUPRRESS EVIDENCE ON A SIGNIFICANT CONSTITUTIONAL ISSUE AND FAILS TO SUBPOENA A WITNESS THAT COULD PROVIDE STRONG CORROBORATING EVIDENCE.

## III.  ASSIGNMENT OF ERROR ONE—CONVICTIONS DID NOT LACK SUFFICIENT EVIDENCE, NOR WERE THEY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 18} Appellant alleges that he shot Simpson in self-defense. Appellant claims that the verdicts are against the manifest weight of the evidence because he did not get out of the car to fight Simpson, and because he believed Simpson was armed. He argues that Simpson is a drug dealer, and that drug dealer's carry weapons.  Also, there was a bullet found near the scene that did not come from appellant's gun, and appellant argues that it can be inferred that it was from Simpson's gun.  We disagree.

{¶ 19} This court in *State v. Baatin*, 10th Dist. No. 11AP-286, 2011-Ohio-6294, ¶ 8-11, stated the applicable law:

> Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily

includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11 * * *. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency. *Id.* * * *.

The weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997-Ohio-52, * * *.

When presented with a challenge to the manifest weight of the evidence, an appellate court may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Id.* at 387. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*; *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury * * * " 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Id.* * * *. Accordingly, we afford great deference to the jury's determination of witness credibility.

{¶ 20} To prove self-defense, a defendant must prove by a preponderance of the evidence that: "(1) he was not at fault in creating the situation, (2) he had a bona fide belief that he was in imminent danger of death or great bodily harm and his only means of escape was the use of such force, and (3) he did not violate any duty to retreat or avoid the danger." *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 45, citing *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus.

{¶ 21} A review of the record shows that appellant did not prove any of the above elements. He was at fault in creating and initiating the altercations on July 15, 2015. He admitted that he could have avoided the confrontation by going a different direction or by not stopping, thereby contradicting the second and third elements of the defense. Further, he admitted firing multiple shots at the victim. Firing multiple shots undermines a claim of self-defense. *State v. Rankin*, 10th Dist. No. 10AP-1118, 2011-Ohio-5131, ¶ 26.

{¶ 22} Also, while appellant claimed that Simpson had a gun, the jury was free to reject his testimony. The jury was fully aware of the drugs recovered from Simpson, along with the unmatched bullet recovered from the scene. "A conviction is not against the manifest weight of the evidence because the jury chose to believe the state's version of events over the defendant's version." *State v. Hawk*, 10th Dist. No. 12AP-895, 2013-Ohio-5794, ¶ 59. The jury and the trial court rejected appellant's testimony, and he presents no persuasive reason for rejecting their determination.

{¶ 23} Moreover, appellant's own version of the incident refuted any legitimate claim that he acted in self-defense. Appellant stated that Simpson had turned to walk or run away when he fired his gun. Again, there was no dispute that Simpson was shot in the back. Thus, appellant's own version refuted a self-defense defense.

{¶ 24} In addition, appellant's argument that he acted in self-defense presents no argument challenging his improper handling conviction, as that offense occurred on a different day than the felonious assault and WUD offenses, i.e., the day of his arrest. (Tr. Vol. I at 5.) Appellant also does not challenge his conviction for WUD. Our review shows that the state presented overwhelming, largely undisputed, evidence establishing all of the elements of the WUD conviction. As such, the trial court's verdict finding appellant guilty of WUD was not against the manifest weight of the evidence.

{¶ 25} After a thorough review, we find that the jury and the trial court did not clearly lose their way when they rejected appellant's self-defense claim. The jury was in the best position to evaluate the witness' credibility, and there is no persuasive reason for rejecting that determination. The evidence does not weigh heavily against conviction, and his challenge to the manifest weight of the evidence fails and, therefore, his insufficient evidence claim also fails. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 17. Therefore, we overrule appellant's first assignment of error.

## IV. ASSIGNMENT OF ERROR TWO—NO DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL

{¶ 26} Appellant claims that his trial attorneys were ineffective for failing to subpoena Detective Patete. Appellant claims that the detective had obtained a recorded statement from the now deceased passenger, Stephens, who purportedly corroborated appellant's testimony that the victim had a gun. Appellant also argues that counsel was ineffective for not filing a motion to suppress evidence with respect to a search of appellant's car. Appellant claims that the search warrant "apparently" was obtained seven minutes after a search of the vehicle "may have been" completed. (Appellant's brief at 14.) We disagree.

{¶ 27} To establish a claim of ineffective assistance of counsel, appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Appellant must show that (1) defense counsel's performance was so deficient that he or she was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) that defense counsel's errors prejudiced defendant. *Id.* The failure to make either showing defeats a claim of ineffectiveness of trial counsel. *Id.* at 697. In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential * * * [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689; *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989).

{¶ 28} An attorney properly licensed in Ohio is presumed competent. *State v. Lott*, 51 Ohio St.3d 160, 174 (1990). The appellant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). In addition, when the alleged ineffectiveness involves the failure to pursue a motion or legal defense, the appellant must show that the motion or defense "is meritorious," and, second, the defendant must show that there is a reasonable probability that the verdict would have been different if the motion had been granted or the defense pursued. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *see also Lott* at 174-76; *State v. Boddie*, 10th Dist. No. 10AP-687, 2011-Ohio-3309, ¶ 10. In demonstrating prejudice, the appellant must

prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Bradley* at paragraph three of the syllabus.

{¶ 29} A claim of trial counsel ineffectiveness usually will be unreviewable on appeal because the appellate record is inadequate to determine whether the omitted objection, motion, or defense really had merit and/or because the possible reasons for counsel's actions appear outside the appellate record. *United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir.1995). Ohio law similarly recognizes that error cannot be recognized on appeal unless the appellate record actually supports a finding of error. A defendant claiming error has the burden of proving that error by reference to matters in the appellate record. *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). "[T]here must be sufficient basis *in the record* * * * upon which the court can *decide* that error." (Emphasis sic.) *Hungler v. Cincinnati*, 25 Ohio St.3d 338, 342 (1986).

{¶ 30} First, we note that Stephens' purported recorded statement is not in the record. An appellant claiming error has the burden of proving that error by reference to matters in the appellate record. *Knapp.* Secondly, the record demonstrates that appellant issued a subpoena, albeit during the trial, for Detective Patete. The state also subpoenaed him. In addition, during trial, defense counsel indicated that the defense had not decided whether they were actually going to call the detective as a witness. Thereafter, trial counsel did not attempt to call the detective. It can be inferred that trial counsel made a decision not to call the witness. *See State v. Hawkins*, 10th Dist. No. 10AP-907, 2011-Ohio-6658, ¶ 59. Generally, a decision by counsel whether to call a witness falls within the rubric of trial strategy and will not be second-guessed by a reviewing court. *Id.* at ¶ 58, quoting *State v. Douthat*, 10th Dist. No. 09AP-870, 2010-Ohio-2225, ¶ 17.

{¶ 31} Further, appellant cannot show prejudice because a recorded statement of a deceased witness made sometime after the shooting was inadmissible hearsay, under Evid.R. 801, for which no exception applied under either Evid.R. 803 or 804. *See State v. Litz*, 8 Ohio App.3d 321, 323-24 (10th Dist.1982) (statement of deceased witness to police officer not admissible under any exception to the hearsay rule). Appellant's first claim challenging trial counsel's representation lacks merit.

{¶ 32} Appellant also claims that trial counsel was ineffective for failing to file a motion to suppress.  Here, the warrant to search is not contained in the appellate record.

As such, there is insufficient factual information and no legal argument supporting appellant's claim that trial counsel failed to file a meritorious motion to suppress, as required to meet his burden. *State v. Nelms*, 10th Dist. No. 06AP-1193, 2007-Ohio-4664, ¶ 15. "Failure to file a motion to suppress can only constitute ineffective assistance of counsel where the record demonstrates that the motion would have been granted." *Id.* The appellate record is inadequate to determine whether the omitted motion had merit. *See Galloway.* Also, appellant failed to prove prejudice, given that he cannot show that the motion to suppress would have been meritorious.

{¶ 33} Appellant cannot overcome the presumption that his counsel was effective, nor show that he was prejudiced in any manner by the actions or inactions of his counsel. As such, appellant's second assignment of error is overruled.

## V. DISPOSITION

{¶ 34} Having overruled appellant's two assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.

————————————